UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP<br><br>      Plaintiff,<br><br>v.<br><br>MEDICAL PRODUCTS, INC.<br><br>      Defendant. | Civil Action No. 1:04-cv-11524-DPW |

## ANSWER AND JURY CLAIM OF DEFENDANT MEDICAL PRODUCTS, INC.

### FIRST DEFENSE

Defendant Medical Products, Inc. ("MPI") hereby answers the Complaint of Plaintiff Tyco Healthcare Group LP ("Tyco") as follows:

### INTRODUCTION

This paragraph describes Plaintiff's theory of its case and contains no factual assertion to which a response is required. To the extent this paragraph may be deemed to require a response, the allegations contained in it are denied.

### PARTIES

1.    MPI is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint and on that basis denies the allegations. Further answering, MPI states that at all relevant times it purchased needle and syringe products from The Kendall Company ("Kendall"), and lacks sufficient information to know the relationship between Kendall and Tyco or what products Tyco sells.

2. Admitted.

3. MPI admits that it is subject to personal jurisdiction in Massachusetts. However, MPI denies that it committed fraudulent acts in Massachusetts, entered into or breached any agreement in Massachusetts or caused substantial harm or damages in Massachusetts.

4. Admitted.

5. MPI is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the Complaint and on that basis denies the allegations.

6. Admitted.

7. MPI admits that venue is proper in this judicial district, but denies that it committed fraudulent acts in this (or any other) District. MPI believes that this case should be transferred under 28 U.S.C. § 1404(a) to a U.S. District Court in the Northern District of Mississippi or the Western District of Tennessee.

## FACTS

### Background

8-21. MPI is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 8-21 of the Complaint and on that basis denies the allegations.

### The MPI Rebate Scam

22. Admitted.

23. MPI admits that it has distributed Kendall needle and syringe products, and has done so for more than 10 years before 1999. Prior to 1999, MPI purchased Kendall products indirectly through other medical products distributors or wholesalers at prices low enough to make it commercially viable for MPI to resell those products to its customers. In or about 1999, Kendall representatives, aware of MPI's purchases and resale of Kendall products, approached

MPI and offered the company to forego purchasing Kendall products indirectly and instead purchase products directly from Kendall at prices at or slightly below the prices MPI had been paying. MPI entered into a direct purchasing agreement at that time. MPI admits that Kendall subsequently terminated this direct purchasing agreement sometime thereafter, but denies that it violated any agreement or obligations or was informed of such violations. MPI was not informed the reason for the termination, but advised by a Kendall representative that other distributors had brought or were contemplating lawsuits against Kendall for improperly terminating the agreements.

24.     After the termination of that direct buying relationship, MPI resumed purchasing Kendall products indirectly from other distributors or wholesalers as it had prior to the direct buying arrangement. In 2000 or early 2001, Kendall representatives again approached MPI about forming another direct purchasing relationship with Kendall. MPI admits that it entered into another direct purchasing agreement with Kendall, but denies that it "contacted" or "sought to obtain" such an agreement from Kendall. Kendall sales representatives, who on information or belief earned commissions on direct sales but not indirect sales, were eager for MPI to resume purchasing directly from Kendall. Neither MPI nor its President Eddie McCafferty recalls asking Kendall "how the rebate program works," and on that basis denies that allegation.

25.     In entering into this direct purchasing arrangement, MPI needed to obtain Kendall products at prices low enough to resell them to its customers. In that regard, a Kendall sales representative informed MPI that it could obtain such commercially viable prices by submitting a "rebate claim" to Kendall. At that time, Kendall was well aware that MPI sold Kendall products to numerous customers. Nevertheless, a Kendall sales representative instructed MPI employees that for sales to customers located in the Western United States, MPI should list "CP Medical" as

the end customer on rebate claim forms so that commissions on those sales could be attributed to and paid to the appropriate sales representative.  At no time was MPI ever informed that, to obtain commercially viable pricing on direct purchases from Kendall, MPI would be forced to divulge the identify of its actual customers, which MPI considered highly confidential and proprietary business information.  MPI would not have entered into a direct purchasing relationship with Kendall had MPI known disclosing such critical information was required.  At all pertinent times, MPI believed the rebate claims it submitted to Kendall were consistent with terms of the direct purchasing agreement with Kendall and not contrary to Kendall's policies or procedures.  Moreover, at no time was MPI provided with a written rebate contract or any other document describing Kendall's rebate policies or MPI's alleged duties or obligations thereunder.

      26.    MPI admits that it continued to purchase products directly from Kendall after March, 2003.  MPI denies that it falsely represented that products were sold to CP Medical and instead filled completed the claim forms as instructed by Kendall.

      27.    MPI admits that it regularly purchased directly from Kendall needles and syringes in from early 2001 through in or about July, 2003.

      28.    MPI admits that it submitted rebate claims to Kendall during that time period which, as expressly instructed by Kendall, listed CP Medical as the customer even though the product actually was sold to other MPI customers.  MPI denies that those claim forms contained any false or fraudulent information or were intended to defraud Kendall.

      29.    Denied.

      30.    Denied.

      31.    Denied.

32.  Denied.  Further answering, MPI states that it attempted to cooperate with Kendall's initial inquiry, but ceased doing so after Kendall refused to agree: (1) to maintain the confidentiality of the identity of MPI's customer; or (2) not to attempt to take MPI's customers away from MPI.  Additionally, MPI's repeatedly requested that Kendall provide a copy of the rebate contract or policy or any other written documents allegedly obligating MPI to furnish such information or otherwise cooperate with Kendall, but Kendall refused to provide those documents.

33.  Denied.

34.  Denied.

35.  Denied.

35(a).  MPI admits that, as expressly instructed by Kendall representatives, it submitted rebate claim forms to Kendall.  MPI denies that the forms contained false or fraudulent information or were submitted with the intent to deceive.

35(b).  MPI admits that, in response to a request from Kendall, it sent copies of certain invoices to Kendall's offices in August of 2003.  MPI denies that it did that to further any scheme to defraud Kendall or that the invoices contained any false or fraudulent information.

35(c).  MPI admits that, in response to a request from Kendall, it sent a document with the invoices referred to paragraph 35(b).  That document speaks for itself.  MPI denies that it sent the document with the intent of continuing or concealing any scheme to defraud Kendall.

## COUNT I

### Mass. Gen. Laws ch. 93A §§ 2 and 11

36. MPI restates the responses to the allegations contained in paragraphs 1 through 35 of the Complaint.

    37. Admitted.

    38. Denied.

    39. Denied.

    40. Denied.

## COUNT II

### Fraud, Misrepresentation and Deceipt

41. MPI restates the responses to the allegations contained in paragraphs 1 through 40 of the Complaint.

    42. Denied.

    43. Denied.

    44. Denied.

    45. Denied.

    46. Denied.

    47. Denied.

## COUNT III

### Breach of Contract

48. MPI restates the responses to the allegations contained in paragraphs 1 through 47 of the Complaint.

    49. Denied.

50. MPI is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 of the Complaint and on that basis denies those allegations.

51. Denied.

52. Denied.

## COUNT IV

### Breach of Implied Covenant of Good Faith and Fair Dealing

53. MPI restates the responses to the allegations contained in paragraphs 1 through 52 of the Complaint.

54. Admitted.

55. Denied.

56. Denied.

## REQUEST FOR RELIEF

Plaintiff's request for relief contains no factual assertions to which a response is required. To the extent the request for relief may be deemed to require a response, it is denied.

## SECOND DEFENSE

MPI denies all allegations contained in the Complaint (including headings and captions) not specifically admitted in this Answer.

## THIRD DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## FOURTH DEFENSE

Plaintiff is not entitled to any relief in light of Plaintiff's material breaches of the direct purchasing agreements.

### FIFTH DEFENSE

Plaintiffs' claims are barred by the doctrines of laches and unclean hands.

### SIXTH DEFENSE

Plaintiff's claims are barred because plaintiffs have not suffered any injury in fact.

### SEVENTH DEFENSE

Plaintiff's alleged harm, if any, was the result of the conduct of third parties for which MPI is not responsible.

### EIGHTH DEFENSE

Plaintiff's alleged harm, if any, was the result of plaintiff's own conduct, for which MPI is not responsible.

### NINTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

### TENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### ELEVENTH DEFENSE

Plaintiff is barred from obtaining a recovery in equity due to its own inequitable and unfair conduct.

### TWELFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by their own material breaches of their contractual obligations and obligations of good faith and fair dealing owed to MPI.

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because MPI always conducted itself in accordance with its contractual obligations owed to Plaintiff, or was excused therefrom by Plaintiff's own conduct.

**FOURTEENTH DEFENSE**

Plaintiff's claims are barred because they have failed to exhaust all administrative or contractual remedies prior to bringing or prosecuting this action.

**RESERVATION OF DEFENSES**

MPI reserves the right to assert additional defenses when they determine the particulars of plaintiff's claims, which are not apparent on the face of the Complaint.

## CLAIM FOR TRIAL BY JURY

MPI claims a trial by jury on all claims.

        Respectfully submitted,

        MEDICAL PRODUCTS, INC.

        By its attorneys,


        /s/ Michael B. Galvin_____
        Michael A. Collora (BBO No. 092940)
        Michael B. Galvin (BBO No. 630515)
        DWYER & COLLORA, LLP
        600 Atlantic Avenue
        Boston, Massachusetts  02210-2211
        Tel: 617-371-1000
        Fax 617-371-1037


Dated:  August 13, 2004

## CERTICATE OF SERVICE

    I, Michael B. Galvin, Esq., do hereby certify that I have hand delivered a copy of the Answer and Jury Claim of Defendant Medical Product, Inc. upon Jeffrey D. Clements, Esq., of Clements & Clements, LLP, 50 Federal Street St., Boston, MA  02110, on this, the 13th day of August, 2004.


        /s/_Michael B. Galvin_____
        Michael B. Galvin