UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MEDICAL PRODUCTS, INC.<br><br>　　　　Defendant. | Civil Action No. 1:04-cv-11524-DPW |

**DEFENDANT'S MEMORANDUM IN SUPPORT
OF MOTION TO TRANSFER THIS ACTION
TO THE NORTHERN DISTRICT OF MISSISSIPPI**

Defendant Medical Products, Inc ("MPI") submits this Memorandum in Support of its Motion to transfer this action to the U.S. District Court for the Northern District of Mississippi. Such a transfer is warranted because: (1) the majority of the witnesses – including all of the witnesses who will testify about the core dispute in this case – reside in the Mississippi area and litigating this case there will be more convenient for them; (2) the Plaintiff, a multi-billion dollar, multinational medical products manufacturer, can more easily absorb and spread the cost of litigating this case in an out-of-state forum than MPI, a small, solely-owned medical products distributor located in Ripley, Mississippi, whose limited resources would be unduly strained by litigating this case in this District; (3) Mississippi law will govern the central contractual dispute involved in this case and thus it is in the interests of justice to have the case litigated there; and (4) the operative facts took place in Mississippi, thereby diminishing the weight afforded to the Plaintiff's choice of forum.

## BACKGROUND

A.  **The Plaintiff's Complaint**

The dispute alleged in the complaint concerns the price of needles and syringes, which the Plaintiff, a multinational manufacturer of medical products, sold to the Defendant Medical Products, Inc. ("MPI"), a small, solely-owned medical products distributor located in Ripley, Mississippi. See generally Complaint. In purchasing those products from the Plaintiff between 2001 and 2003, the Plaintiff alleges MPI violated the terms of a rebate contract, under which the Plaintiff alleges MPI could obtain a discount on those products by selling them to "qualified" customers – that is, customers authorized to purchase the products by the Plaintiff. Id., ¶¶ 18, 24-32. Because MPI sold needles and syringes to allegedly non-qualified customers, the Plaintiff now claims MPI was not entitled to the discount. Id., ¶¶ 28-31. The Plaintiff further contends that MPI also submitted rebate claims and invoices reflecting sales to "CP Medical," a qualified customer, for products actually sold to other customers and refused to disclose the identity of those customers upon the Plaintiff's demand. Id., ¶¶ 32-34, 35b, 35c.

Based on those allegations, the Plaintiff seeks to recover damages, injunctive relief and other remedies from MPI on the following theories: (1) breach of contract and implied theory of good faith; (2) fraud, misrepresentation and deceit; and (3) violation of Mass. Gen. L. ch. 93A, § 11. Complaint, ¶¶ 36-56. MPI has denied liability on those claims. See generally, Answer.

B.  **Background Regarding MPI**

1.  **The Company's History**

MPI was founded in 1984 by its current President and sole-owner Eddie McCafferty. See Affidavit of Eddie McCafferty ("McCafferty Aff."), filed herewith, ¶¶ 1-2. MPI operates in the highly competitive field of medical product distribution, purchasing products from other medical

2

products distributors, wholesalers or manufacturers and re-selling those products at slightly marked-up prices to other medical products distributors. Id., ¶ 2. Most of MPI's customers are small providers of medical services, such as small distributors, who typically do not purchase medical products in large enough volume to warrant purchasing directly from manufacturers. Id., ¶ 3. MPI employs fewer than ten people, each of whom work out of a single office located in Ripley, Mississippi. Id., ¶ 4. In 2003, MPI had gross sales of less than $10.4 million and net income of less than $158,000. Id.

MPI's customers could easily purchase the same products elsewhere. MPI competes based on price, service and the relationship it has cultivated with its customers. McCafferty Aff., ¶ 6. To protect its business, MPI keeps information about its customers confidential and generally does not share their identity or purchasing information with manufacturers or distributors. Id.

### 2. MPI's Distribution of the Plaintiff's Products

MPI has distributed the Plaintiff's needles and syringes since shortly after MPI opened for business. McCafferty Aff., ¶ 7. For approximately 15 years, MPI did so with products purchased from other medical products distributors or wholesales. Id. That indirect system of purchasing changed after David Gaffney, a sales representative for the Plaintiff who worked out of Jackson, Mississippi, came to MPI's Ripley, Mississippi office and offered to sell the Plaintiff's products directly to MPI. Id., ¶ 8. To handle MPI's account, Mr. Gaffney assigned Rob Cotton, another sales representative who worked out of Memphis, Tennessee and regularly visited MPI's Ripley, Mississippi office. Id.

### 3. The Direct Purchasing Arrangement

The direct purchase arrangement at issue in this case first took effect in early 2001. Prior to then, Mr. Cotton met with Mr. McCafferty and other MPI personnel in Ripley, Mississippi and explained the arrangement. McCafferty Aff., ¶ 9. At that time, Mr. Cotton was well aware that MPI had been purchasing the Plaintiff's products from other distributors and wholesalers and selling them to various customers. He never said the new agreement precluded MPI from selling to those customers or required MPI to disclose their identity. Id.

At the meetings in Ripley, Mr. Cotton also advised MPI that it could continue to make those sales without revealing the identity of its customers to the Plaintiff. McCafferty Aff., ¶ 10. To track and allocate commissions on sales of the Plaintiff's products, Mr. Cotton told MPI personnel to report our sales of the products to the Plaintiff as if they were sold to one of two companies: (a) a medical products distributor in Arkansas (Mr. Cotton's sales territory); and (b) CP Medical, a medical products distributor located in Portland, Oregon. Id. Mr. Cotton said that the Plaintiff would enter into contracts with those companies. Id. He never told MPI personnel that MPI would not be eligible for the discounted price from the Plaintiff if we did not sell the product to either of those companies. Id. Because of the proprietary nature of MPI's customer information, it would not have purchased products from the Plaintiff if MPI was required to disclose that information without adequate assurances of confidentiality. Id., ¶ 11.

MPI does not have a copy of any written rebate policy or rebate contract from the Plaintiff and does not believe it was ever provided with it or any other written document providing instructions on how to submit rebate claims. See McCafferty Aff., ¶ 12.

    **4.**    **MPI's Purchases from the Plaintiff**

After entering into that direct purchasing arrangement, MPI routinely ordered needles and syringes from the Plaintiff, submitting purchase orders to the Plaintiff's Palantine, Illinois offices

4

and receiving the products from its distribution center in Atlanta, Georgia.  See McCafferty Aff., ¶ 13.  MPI regularly submitted rebate claim forms pursuant to the oral instructions provided by Mr. Cotton.  Id.  According to the Plaintiff, MPI submitted over 70 rebate claim forms over more than two years.  Complaint, ¶¶ 28, 35a.  At no point during that time period did Mr. Cotton or anyone else from the Plaintiff question MPI's entitlement to the price discounts or indicate there was anything wrong with those forms.  See McCafferty Aff., ¶ 14.

It was not until two and one half years later, in July, 2003, that the Plaintiff questioned the direct purchasing arrangement.  At that point, the Plaintiff informed Mr. McCafferty that it knew MPI was not selling the needles and syringes to CP Medical and demanded that MPI disclose the identity of its customers.  See McCafferty Aff., ¶ 15.  Despite of MPI's policy against divulging that type of information, Mr. McCafferty was willing to make an exception to resolve this dispute, provided the Plaintiff: (1) agree to keep that information confidential and not attempt to take MPI's customers away from it; and (2) supply MPI with a copy of the Plaintiff's written rebate policy and rebate contract.  Id.  After initially indicating a willingness to do those things, the Plaintiff abruptly changed its position, informing Mr. McCafferty on or about August 29, 2003 that it was "not required" to provide such assurances that it would not take MPI's customers.  Id., ¶ 16.  Without further negotiations and other ten months later, the Plaintiff initiated this lawsuit in this judicial district.  Id., ¶ 17.

## ARGUMENT

### This Action Should Be Transferred to the U.S. District Court for the Northern District of Mississippi.

This Court may transfer this case under Section 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

5

28 U.S.C. § 1404(a). This action might have been brought in the Northern District of Mississippi because a substantial part of the events giving rise to the claim occurred there, and because MPI is subject to personal jurisdiction there. See 28 U.S.C. § 1391(a).

"The decision to transfer a case pursuant to § 1404 rests within the sound discretion of the trial court." Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 102, 116 (D. Mass. 2003) (citing Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977)). "In making that determination, the Court must balance several factors, including the convenience of the parties and the witnesses, the availability of documents and the interests of justice." Workgroup Tech., 246 F. Supp.2d at 116; see Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000); Cianbro Corp v. Curran Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987).

### 1. Mississippi Is the Most Convenient Location for the Majority of Witnesses.

Of all of the factors considered by the courts, the convenience of the witnesses is "[p]robably the most important factors, and the factor most frequently mentioned." Atari v. United Parcel Service, Inc., 211 F. Supp. 2d 360, 362 (D. Mass. 2002) (quoting Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991)). Accord Workgroup Tech., 246 F. Supp. 116 ("Of the factors, the convenience of the expected witnesses is probably the most important factor.").

In this case, the majority of the witnesses are located in the Mississippi area. They are:

- Mr. McCafferty, MPI's founder, owner and President, who lives and works in Ripley and will testify about MPI's business, its various purchasing relationships, the terms of MPI's direct purchasing arrangement with the Plaintiff, MPI's purchases under that arrangement and his attempts to resolve the dispute without resort to litigation. See McCafferty Aff., ¶¶ 2-17.

- Jody Steverson, MPI's Operations Manager, who lives and works in Ripley, MS, attended MPI's meetings with Mr. Cotton and will testify about what happened at those meetings and what information Mr. Cotton instructed MPI

6

    to put on the rebate claim forms. See Affidavit of Michael B. Galvin, Esq. ("Galvin Aff."), ¶ 2.

- Christy Vandygriff, MPI's Purchasing Manager, who works in Ripley and lives in that area, and submitted most, if not all, of the rebate claim forms involved in this case and will testify about the instructions she received about the information reflected on those forms. Id.

- Robbie Hayes, an MPI sales representative, who works in Ripley and lives in Tupulo, MS and will testify about the instructions he received with respect to the information contained on the rebate claim forms and conversations he had with Mr. Cotton. Id.

- David Gaffney, the Plaintiff's sales representative, who, on information and belief, works for the Plaintiff in Jackson, MS, and who initially approached MPI about a direct purchasing arrangement, assigned Mr. Cotton to MPI's account and oversaw that account. Id.

- Rob Cotton, a Kendall sales representative, who, on information and belief, works for the Plaintiff in Memphis, Tennessee and informed MPI personnel about the terms of the 2001 direct purchase arrangement and how to fill out the rebate claim form. Id.

- Hailey Moffitt, a former MPI Accounts Receivable Manager, who lives in the Ripley, area and will testify about the terms of the rebate claim and MPI's submission of rebate claims to the Plaintiff. Id.

  Included in this list of Mississippi-area witnesses are all of the witnesses to the critical formation and terms of the direct billing arrangement: Messrs. McCafferty, Steverson, Hayes, Vandygriff, Cotton and possibly Gaffney. None of them reside within 100 miles of this Court and could not be compelled to testify before this Court. "[S]uch a result is unacceptable when the action can be transferred to a district where attendance can be compelled and live testimony can be presented to the jury." Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 5 (D. Mass. 1987). All of the witnesses listed above, with the possible exception of Mr. Gaffney, live within 100 miles of the U.S. District Court for the Northern District of Mississippi in Oxford, Mississippi.

  Since those crucial events occurred in Mississippi, it is not surprising that there apparently is only one witness from outside that area: Joseph Burke, an auditor apparently

7

employed by the Plaintiff who contacted Mr. McCafferty in or around July, 2003. The Plaintiff claims that Mr. McCafferty lied and submitted false invoices to Mr. Burke. See Complaint, ¶¶ 33-34.

While it is not clear that Mr. Burke's testimony would be admissible at trial, even assuming it is, his testimony does not change the fact the key events in this case took place years earlier in Ripley, Mississippi, where witnesses will testify that Mr. Cotton advised MPI about the terms of the direct purchase arrangement and how to fill out and submit rebate claim forms. Mr. Burke was not at those meetings and thus cannot testify on those topics. It makes little sense to inconvenience the vast majority of witnesses, including all of the witnesses with critical information, for the benefit of one witness who will offer testimony on what is, at best, a peripheral topic. Cf. Symbol Techs., Inc. v. Quantum Assocs., Inc., No. 01-10983-GAO, 2002 WL 225934 at * 2 (D. Mass. Jan. 30, 2002) (granting motion to transfer breach of contract case to Northern District of California where the contracts at issue were predominantly negotiated in California and another state and "key players" to the dispute lived and worked in California); Atari, 211 F. Supp. 2d at 364-65 (granting motion to transfer to the judicial district where most important witnesses were located).

### 2. Between the Parties, the Plaintiff is More Capable of Litigating in an Out-Of-State Forum.

Aside from providing the most convenient forum for the majority of witnesses, the Northern District of Mississippi is also the most convenient forum for the parties. "There is a qualitative component to the balance of convenience which must focus on the comparative financial abilities of the parties and the cost of the litigation should be borne by the party in the best position to absorb and spread it." Kleinerman, 107 F. Supp. 2d at 125. Plainly, that party is the Plaintiff.

Litigate this case in this District would present a potentially overwhelming financial and logistical burden for MPI.  Doing so would, among other things, require MPI to pay for its current legal counsel to travel to Ripley, Mississippi at least once (and probably multiple times) to review documents, discuss the case with fact witnesses, to prepare for and to take depositions, a process that will cost MPI tens of thousands of dollars.  Galvin Aff., ¶ 3.  In additional, it will likely take over a week to try this case, id., during which time the majority of MPI's personnel and all of MPI's senior personnel will need to be in Boston to prepare for and to testify at trial. Id.,¶ 4. The trial will cost tens of thousands more dollars.  It will also require MPI to shut down its business during the trial because the majority of its employees and its entire senior staff will be in Boston.  McCafferty Aff., ¶¶ 18.  The huge financial and logistical burden of MPI litigating this matter in this District will potentially deprive it of judicial resolution to this dispute.  Id.

On the other hand, the Plaintiff could easily absorb and spread the cost of litigating this case in the Northern District of Mississippi.  According to information contained on the Plaintiff's website, it is a wholly owned subsidiary of Tyco International, Ltd, a Fortune 100 company, whose healthcare division alone employs 38,000 worldwide and had revenue of $8.6 billion last year.  See http://www.tyco.com/businesses/healthcare.asp (8/23/04).  The Plaintiff parent company's SEC filings reflect numerous lawsuits involving the parent company and the Plaintiff is locations throughout the United States.  See, e.g., 2003 Tyco 10-K Report, available at http://www.tyco.com/investor/annual_reports.asp, at 50-53 (8/24/2004).  As noted above, the Plaintiff employs representatives throughout Mississippi, including at least one assigned to Ripley, Mississippi.  The fact that the vast majority of witnesses reside in or near the Northern District of Mississippi will make it less expensive for the Plaintiff to litigate this case there.  Cf. Symbol Techs., 2002 WL 225934 at * 2-3 (granting motion to transfer based in part on parties'

9

disparate financial resources where plaintiff, a software computer with several locations nationwide, brought suit against defendant, a small software and consulting company with one location and one employee).

### 3. In this Diversity Case, Mississippi Law Will Govern.

Yet another factor warranting transfer is the interests of justice in conducting "the trial of a diversity case in a forum that is at home with the state law that governs the action." Princess House, 136 F.R.D. at 22 (citing Van Dusen v. Barrack, 376 U.S. 612, 645 (1964)). Although the choice of laws issues have not yet to be fully fleshed out at this early in the litigation, it appears that Mississippi law will govern at least the core breach of contract and breach of implied covenants of good faith claims. Mississippi is the place where the contract at issue was formed and the place where any alleged breach would have occurred. Moreover, MPI has no real or personal property holdings, mailing addresses or telephone listings or bank accounts in Massachusetts. See McCafferty Aff., ¶ 5. Thus, Mississippi is the state with the most significant relationship to the transaction and the parties, and its law will govern the core claims at issue. See Princess House, 136 F.R.D. at 23 (quoting Restatement (Second) of Conflicts of Laws § 188(1) (1971) (absent choice of law by parties, their rights are determined by local law of state which ahs the most significant relationship to transaction and parties)).[1]

### 4. The Weight of the Plaintiff's Choice of Forum is Diminished Because the Operative Facts Occurred in Mississippi.

Finally, while the Plaintiff's choice of forum is a factor this Court may consider, that factor is subject to less weight than usual because the operative facts in this case took place in Mississippi. See Brant Point Corp., 671 F. Supp. at 5 ("[T]he weight to be accorded plaintiff's

---

[1] Even if Massachusetts law governs the Plaintiff's ch. 93A claim, that should not stop this Court from transferring this action. See Princess House, 136 F.R.D. at 23 ("The fact that Massachusetts law governs one claim of several is not enough, in and of itself, to deter this Court from transferring this action.").

10

choice of forum varies with the circumstances of the case.  Where … the operative facts of the case have no material connection with this district, plaintiff's choice of forum carries less weight … and is given equal consideration along with other factor which must be considered under § 1404.").  As discussed above, the Plaintiff approached the Plaintiff in Mississippi, the agreements were formed there and any breach of them occurred there.  Under those circumstances, less weight should be given to a Plaintiff's forum choice.

## **CONCLUSION**

For each of these reasons, Defendant MPI respectfully requests that this Court transfer this case to the U.S. District Court for the Northern District of Mississippi.

>
> Respectfully submitted,
>
> MEDICAL PRODUCTS, INC.
>
> By its attorneys,
>
> /s/ Michael B. Galvin
> _____
> Michael A. Collora (BBO No. 092940)
> Michael B. Galvin (BBO No. 630515)
> DWYER & COLLORA, LLP
> 600 Atlantic Avenue
> Boston, Massachusetts  02210-2211
> Tel: 617-371-1000
> Fax 617-371-1037

Dated:  September 1, 2004