UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP<br><br>**Plaintiff,**<br><br>v.<br><br>MEDICAL PRODUCTS, INC.<br><br>**Defendant.** | Civil Action No. 1:04-CV-11524-DPW |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO TRANSFER VENUE TO THE DISTRICT OF MISSISSIPPI**

## I.    INTRODUCTION

Defendant Medical Products, Inc. ("MPI"), having admitted that it is subject to personal jurisdiction in Massachusetts and that venue in this Court is proper, nevertheless seeks to transfer this action to the U.S. District Court for the Northern District of Mississippi pursuant to 28 U.S.C. §1404(a). Plaintiff Tyco Healthcare Group LP ("Tyco Healthcare") opposes the motion because MPI has failed to demonstrate any reason why the presumption that the action should remain in this District should be set aside. To the contrary, convenience to the parties and to the overwhelming number of witnesses favors a Massachusetts forum; the case primarily concerns fraud committed on the plaintiff in Massachusetts and that damaged the plaintiff in Massachusetts; and Massachusetts law will govern the action.

Tyco Healthcare submits with this Memorandum Affidavits of Joseph Burke, David Gaffney, Erica Spendlove, and its counsel, all of which demonstrate that: (1) MPI engaged in the alleged rebate fraud that is the subject of the action by faxing false rebate

claim forms to Tyco Healthcare's headquarters in Massachusetts; (2) MPI's rebate claims were processed in Massachusetts; (3) Tyco Healthcare paid the rebates by issuing credit memos in Massachusetts; (4) Tyco Healthcare approved the rebate contract that is the subject of this litigation in Massachusetts; (5) most of the relevant witnesses are employed in Massachusetts; (6) Tyco Healthcare sales representatives who are not based in the Mansfield office of Tyco Healthcare, such as Rob Cotten or Hal Lundell, will not be inconvenienced by the District of Massachusetts forum; and (7) the District of Massachusetts is not a more inconvenient forum to non-party witnesses in Oregon, such as representatives of CP Medical, than is the District of Northern Mississippi. Accordingly, MPI's motion should be denied.

## II.     FACTUAL BACKGROUND

Tyco Healthcare, with its headquarters and its principal business operations in Mansfield, Massachusetts, manufactures and sells various medical products, including the needle and syringe products sold to MPI, as described in Tyco Healthcare's Complaint. MPI, based in Ripley, Mississippi, purchases medical products from manufacturers and distributes those medical products to various end-users (and, as it describes in its Answer, to other distributors or re-sellers). Beginning in 2001, MPI obtained a "rebate contract" from Tyco Healthcare by falsely representing that the contracts concerned sales that MPI intended to make to CP Medical, a medical products company based in Portland, Oregon. (Complaint; Affidavit of Joseph Burke ("Burke Aff."), ¶¶ 3-12; Affidavit of Erica Spendlove ("Spendlove Aff."), ¶¶ 9-10).

Under a rebate contract, a distributor agrees to purchase products at a defined "dealer price," which the distributor pays to Tyco Healthcare. Provided that the

distributor then sells the products to the end-user identified in the rebate contract (in this case, CP Medical), the distributor may apply for and receive a rebate of a portion of the dealer price that it paid.  (Complaint. ¶¶ 12-21; Spendlove Aff. ¶¶ 3-5; Burke Aff. Ex. 4).

The MPI-Tyco Healthcare rebate contracts for CP Medical at issue in this action were negotiated with MPI by a Tyco Healthcare sales representative based in the State of Washington (whose sales territory included Portland, Oregon, the location of CP Medical) and the rebate contract was approved, as required, in Tyco Healthcare's Mansfield, Massachusetts headquarters.  (Burke Aff., ¶ 3; Affidavit of David Gaffney ("Gaffney Aff."), ¶ 4; Affidavit of Jeffrey D. Clements ("Clements Aff."), ¶2(f)). Witnesses based in Mansfield, Massachusetts are expected to testify at trial about the approval and terms of the MPI rebate contract.  (Clements Aff., ¶ 2; Burke Aff. ¶¶ 1, 17; Spendlove Aff. ¶¶ 1-2, 12; Gaffney Aff. ¶¶ 1, 7).

Contrary to the terms of the rebate contract, however, MPI did not sell the products to CP Medical but instead diverted them to other customers of MPI. (Complaint, ¶¶ 22-35; Burke Aff. ¶¶ 8-14.)   Tyco Healthcare did not know that MPI had diverted the CP Medical products.  Indeed, MPI submitted to Tyco Healthcare over seventy fraudulent rebate claim forms between July 2001 and July 2003, all of which falsely stated that the sales had been made to CP Medical.  (*Id*.; Spendlove Aff., ¶ 10). Witnesses based in Mansfield, Massachusetts are expected to testify at trial about the receipt in Mansfield of the false rebate claim forms, and Tyco Healthcare's reasonable reliance on the claim forms as represented by MPI. (Clements Aff., ¶ 2; Spendlove Aff., ¶¶ 3-10).

3

MPI submitted each CP Medical rebate claim form by fax to Tyco Healthcare's headquarters in Mansfield, Massachusetts. (Burke Aff. ¶¶ 3-5). Each claim form submitted by MPI identified the Mansfield, Massachusetts address of Tyco Healthcare. (*Id.*) Because MPI falsely identified CP Medical as the customer on the claim forms, the rebates were duly processed by Tyco Healthcare, and credit memos were issued to MPI. (Spendlove Aff., ¶¶ 3-10; Burke Aff., ¶ 6). Both the processing and the issuance of the credit memos were handled by Tyco Healthcare's Rebate Department in Mansfield, Massachusetts. (Spendlove Aff., ¶¶ 3-10). In reliance on the fraudulent rebate claim forms submitted by MPI, Tyco Healthcare was deceived into paying to MPI over $430,000.00. (Complaint ¶ 29). Witnesses based in Mansfield, Massachusetts are expected to testify at trial concerning the processing and payment of MPI's rebate claims. (Clements Aff., ¶ 2; Spendlove Aff., ¶¶ 1-10).

In July 2003, suspicion about MPI's rebate claims came to the attention of Tyco Healthcare's Manager of Distributor Audits, Joseph Burke. Mr. Burke works in Tyco Healthcare's Mansfield, Massachusetts headquarters. (Burke Aff., ¶ 1.) Mr. Burke began inquiring about the matter, and had several communications with MPI's president, Eddie McCafferty, about the CP Medical rebate claims. (*Id.*, ¶ 7-9.). In the course of these communications, MPI made several additional false statements and misrepresentations, including the mailing to Mr. Burke's office in Massachusetts of numerous invoices that falsely represented that MPI had sold the products under the rebate contract to CP Medical. (*Id.*, ¶¶ 7-14) Mr. Burke is expected to testify at trial. (Clements Aff., ¶ 2(a)).

After MPI refused to provide truthful information or otherwise account for its false rebate claims, Tyco Healthcare brought this action. Tyco Healthcare alleges that

4

MPI's submission of false claims in order to obtain rebate payments constitutes fraud and deceit under Massachusetts common law, and unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A §§2 and 11. (Complaint). Tyco Healthcare also alleges that MPI breached the rebate contracts and violated the covenant of fair dealing implied in the rebate contracts. (*Id.*)

The great majority of the testimony and evidence that Tyco Healthcare intends to present at trial is based on witnesses and documents from its headquarters in Mansfield, Massachusetts. (Clements Aff., ¶ 2). These witnesses may include Joseph Burke, David Gaffney, Erica Spendlove, Lorraine Mailhot, and Tom Coady, among others. In addition, to the extent that Tyco Healthcare sales representatives who are not based in Mansfield are needed at trial, such as Rob Cotten (based in Memphis, Tennessee) and Hal Lundell (based in the State of Washington), they may be asked to come to Massachusetts without undue inconvenience. (Clements Aff. ¶ 5). Finally, testimony and documentary evidence may be necessary from witnesses located at CP Medical in Portland, Oregon, and Mississippi is not a more convenient forum either for those third-party witnesses or for the parties seeking to obtain evidence from those witnesses.

### III.    ARGUMENT

MPI admits that the District of Massachusetts is the proper venue for this diversity matter, and thus concedes that a substantial part of the events giving rise to this action occurred in this district. *See* Answer, ¶ 7; 28 U.S.C. §1391(a)(2) (diversity action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .") MPI also "admits that it is subject to personal jurisdiction in Massachusetts." (Answer, ¶3). Based on a mischaracterization of

5

this fraud case as a pricing dispute, and a highly selective identification of witnesses that unduly emphasizes the few witnesses from Ripley, Missssippi, while ignoring the numerous witnesses and documents in Mansfield, Massachusetts, MPI argues that the action should be transferred to the District of Northern Mississippi "for the convenience of the parties and witnesses, and in the interests of justice." 28 U.S.C. §1404(a).

Particularly where MPI admits that venue is proper and personal jurisdiction over it exists, the plaintiff's selection of this venue should not be disturbed. Further, where most of the operative facts, the witnesses, the documents, the alleged harm, and the applicable law are all based in Massachusetts, MPI's motion should be denied because MPI has failed to demonstrate that transfer to the District of Mississippi is warranted.

### A.   MPI Has Failed to Overcome the Presumption That The Action Should Not Be Transferred.

In deciding a motion to transfer pursuant to 28 U.S.C. §1404(a), the district court may weigh factors of convenience to witnesses and the parties, among others, but a "plaintiff's choice of forum is entitled to 'great weight.'" *Fairview Machine & Tool Co., Inc. v. Oakbrook International, Inc.*, 56 F. Supp.2d 134, 141 (D.Mass. 1999), *quoting Home Owners Funding Corp. of American v. Century Bank,* 695 F. Supp. 1343, 1347 (D.Mass. 1988). Indeed a "presumption in favor of the plaintiff's choice of forum exists, and the burden of proving that a transfer is warranted rests with the defendant." *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC,* 246 F. Supp.2d 102, 116 (D.Mass. 2003) *citing Fairview Machine,* 56 F. Supp.2d at 141 (Mag. J. Collings denies motion to transfer because "[[t]h facts show that no matter where this case is tried, one side or the other will be inconvenienced.")

6

MPI seeks to evade this presumption that favors retaining the action in the District of Massachusetts by erroneously claiming that "the operative facts took place in Mississippi, therefore diminishing the weight afforded to the plaintiff's choice of forum." (Defendant's Memorandum in Support of Motion to Transfer ("Def. Mem."), at 2). MPI also disregards the "operative facts" of a fraud committed in Massachusetts upon a Massachusetts-based company by mischaracterizing the case as one that merely "concerns the price of needles and syringes . . . ." (Def. Mem. at 2).

As is clear from the Complaint and the accompanying affidavits this case is not merely a dispute about pricing, but about a fraudulent scheme to obtain hundreds of thousands of dollars in rebate payments. The operative facts include the seventy false rebate claim forms that MPI sent to Massachusetts, and that Tyco Healthcare processed and acted upon in Massachusetts. The operative facts also include Tyco Healthcare's rebate-fraud inquiry conducted in Massachusetts, and the additional misrepresentations and false invoices sent by MPI to Massachusetts in the course of that inquiry.

Moreover, to the extent that the operative facts concern MPI's breach of the rebate contract, as opposed to its fraudulent scheme, most of the witnesses concerning the terms, conditions, approval, and termination of the contract, as well as the implementation of the rebates at issue under the contract, are employed in Massachusetts. (Clements Aff. ¶ 2). MPI, therefore, has failed to overcome the presumption that Tyco Healthcare's selection of venue in this district requires denial of MPI's motion to transfer venue to Mississippi.

## B. The Convenience of the Parties and Witnesses Weighs Against Transfer of the Case to Mississippi.

While MPI correctly notes that the convenience of witnesses is entitled to some weight in considering a motion to transfer, MPI wrongly asserts that Mississippi is a more convenient forum for witnesses likely to have relevant knowledge. MPI offers a description of witnesses that ignores witnesses and evidence likely to be presented by the Massachusetts plaintiff, and makes no reference to the numerous witnesses in Massachusetts that dealt with MPI and handled its false rebate claims. As the accompanying affidavits demonstrate, the action should not be transferred because the most important witnesses, other than MPI's president, Eddie McCafferty, are located in Massachusetts. *See R.W. Granger & Sons, Inc. v. Rojac Company, Inc.,* 885 F. Supp. 319, 323 (D.Mass. 1995) (motion to transfer denied where plaintiff brought case in Massachusetts, and plaintiff "which bears the burden of proof on the issues of breach of contract and negligence asserts that proximity to the [disputed out-of-state] project will not be crucial at trial, and that many of its witnesses are located in Massachusetts.")

Here, most of the necessary witnesses are employed at Tyco Healthcare's headquarters in Mansfield, Massachusetts, and would be seriously inconvenienced if the action were transferred to Mississippi. Of the two Tyco Healthcare sales representatives identified as possible witnesses by MPI, one (David Gaffney), in fact, is employed and lives in Massachusetts. (Gaffney Aff., ¶ 7). The other (Rob Cotten) may be requested to come to trial in Massachusetts, and certainly has not been shown by MPI to be unavailable.

In addition to the affidavits of some of the Massachusetts witnesses concerning MPI, Tyco Healthcare has submitted an affidavit of counsel summarizing the identity and location of witnesses likely to be necessary in this case:

a. Joseph Burke, Tyco Healthcare's Manager of Distributor Audits. Mr. Burke is employed in Mansfield, Massachusetts, and is responsible for reviewing distributor compliance with Tyco Healthcare policies and detecting distributor fraud. He is expected to give a wide range of relevant testimony, including, without limitation, testimony concerning Tyco Healthcare's policies, terms and conditions concerning distributor contracts and rebates; his investigation and detection of the rebate fraud perpetrated by MPI; his communications with MPI and its president, Eddie McCafferty (all of which occurred while Mr. Burke was in Massachusetts); his determination that MPI was not selling the products to CP Medical, as MPI had claimed; the receipt in Massachusetts of false claim forms, statements and "invoices" from MPI and Mr. McCafferty; relevant policies, rebate forms, contract and other documents (which are largely located in Massachusetts); and Tyco Healthcare's damages as a result of MPI's conduct.

b. David Gaffney, Tyco Healthcare's Director, Health Systems, Alternate Site Accounts. Mr. Gaffney is employed at Tyco Healthcare's Mansfield, Massachusetts headquarters. Mr. Gaffney is expected to testify about his dealings with MPI, and will refute the erroneous testimony suggested by Mr. McCafferty's affidavit submitted with the defendant's motion to transfer.

c. Erica Spendlove, Tyco Healthcare's Director of Rebates, is employed in the Mansfield, Massachusetts headquarters. She is expected to testify about the administration of Tyco Healthcare rebates to qualified distributors, the rebate claim forms submitted to her office in Massachusetts by MPI, and the credit memos issued to MPI in Massachusetts based on those rebate claim forms.

d. Lorraine Mailhot, a Tyco Healthcare customer service representative, is employed in the Mansfield, Massachusetts headquarters. She is expected to testify about her processing of the MPI rebate claims and her communications with MPI employees concerning the CP Medical rebate contract.

e. Thomas Coady, a credit analyst with Tyco Healthcare. Mr. Coady also is employed at Tyco Healthcare's Mansfield, Massachusetts headquarters, and may testify concerning Tyco Healthcare's damages, including the impact of MPI's fraudulently obtained rebate credit memos.

     f.      Hal Lundell, a Senior Account Manager with Tyco Healthcare. Mr. Lundell is based in the State of Washington, and his sales territory includes Portland, Oregon, where CP Medical is located. He is expected to testify concerning MPI's false representations that it was selling Tyco Healthcare products to CP Medical, as well as his dealings with CP Medical and MPI.

     g.      Rob Cotten, an Account Manager with Tyco Healthcare, is based in Memphis, Tennessee. He is expected to testify concerning his communications and dealings with MPI, MPI's claim that it intended to sell the products at issue to CP Medical and ship them to CP Medical or its customers, and his referral of MPI to Hal Lundell, who was the representative for the sales territory where CP Medical was located, among other things.

     h.      Pat Ferguson, Jeff Baron and/or other employees of CP Medical, a medical products company in Portland, Oregon, are expected to testify concerning the falsity of MPI's representations of sales to CP Medical; their other dealings with MPI; and the misleading of Tyco Healthcare.

     i.      Eddie McCafferty and other MPI employees, based in Ripley, Mississippi, are expected to testify about the diversion of products purchased under the rebate contracts, the false claims that the products were sold to CP Medical, MPI's receipt of rebates under false pretenses, the amount of MPI's ill-gotten gains, among other areas of testimony.

Most of the relevant witnesses, therefore, are based in Massachusetts, and the transfer of the action to the District of Northern Mississippi would be inconvenient for them. Further, this forum obviously is more convenient to the plaintiff, which maintains its headquarters in Massachusetts, has its attorneys (in-house and well as counsel in this litigation), relevant witnesses and documents here, and was harmed in Massachusetts.

On the other hand, MPI exaggerates the inconvenience to itself and the few witnesses who would be needed from Ripley, Mississippi. Most of MPI's claimed burdens and costs of litigating this action are burdens and costs with which the parties must contend regardless of whether the action is in Mississippi or in Massachusetts.

Discovery and depositions will be necessary in Massachusetts (primarily) and in Mississippi and Oregon (to a lesser extent).  Trial will require some disruption of regular business activities for both parties, regardless of whether the trial takes place in this district or in Mississippi.

MPI, citing information about the plaintiff's parent company from the internet and SEC filings, suggests that the Court should place a rather large thumb on the scale in weighing the relative inconvenience to the parties by examining the revenues, number of employees, and relative size of the plaintiff and defendant. (Def. Mem. at 9).  Apart from the inaccuracy of comparing MPI not to the plaintiff but instead to its conglomerate parent company, this approach is neither appropriate as a matter of law nor fair to Tyco Heathcare's witnesses and employees in Massachusetts.

Where so many other factors (including MPI's admission of proper venue, witnesses, documentary evidence, operative facts, harm, and governing law, among others) are based in Massachusetts, an inquiry into which party can better "absorb and spread the costs" of litigating in the other's "home" district would unduly encourage forum selection battles based on the perceived financial resources of the other party. *See Little, Brown and Co. v. Bourne*, 493 F. Supp 544, 548-9 (D. Mass. 1980) (denial of motion of individual defendant to transfer venue to District of Columbia where he resided and worked on the matter in dispute because other witnesses were predominantly in Massachusetts and New York, and "the inconvenience to the defendant of litigating in Massachusetts is slight [and] it simply does not rise to the level of hardship that warrants denying plaintiff its primary right to choose a forum.")

MPI did not hesitate to conduct a national business, seeking rebate contracts with a Massachusetts company by claiming that it had a large volume of business in Portland, Oregon. MPI submitted seventy false rebate claims to the plaintiff in Massachusetts for more than two years, concedes that venue is proper here, and admits that it is subject to personal jurisdiction here. MPI should not be surprised that it may be called upon to account for its conduct in this district.

      C.      **No Choice of Law Issue Yet Exists, And The Likely Applicable Law of Massachusetts Weighs Against Transfer of the Case to Mississippi.**

MPI mistakenly claims that "Mississippi law will govern the central contractual dispute involved in this case and thus it is in the interests of justice to have the case litigated there." (Def. Mem. at 2). This argument fails for at least three reasons.

First, to the extent that the question of applicable law is a factor in assessing whether transfer of the case is warranted, the analysis weighs strongly *against* transfer of the case. MPI makes no showing that Mississippi law is likely to apply to the contract claim where the rebate contract was approved in Massachusetts, breached by the sending of false claim forms to Massachusetts, negotiated with a sales representative in the State of Washington, and purportedly concerned an Oregon purchaser of products.

Second, despite MPI's effort to characterize this case as a dispute about "the price of syringes," the central claims and issues in the case concern fraud and violation of Massachusetts General Laws, ch. 93A. The conduct at issue concerns fraudulent rebate claims filed in Massachusetts, false invoices sent to Massachusetts, misrepresentations made to a Massachusetts business in order to induce payment of unearned rebates in Massachusetts. Mississippi law has no bearing on these issues.

Third, the defendant does not begin to suggest that any conflict actually exists between the law of Mississippi and Massachusetts. Any speculation that Mississippi law may govern the breach of contract claim is pointless, therefore, and certainly does not justify reference to a Mississippi court. *Reicher v. Berkshire Life Insurance Company of America*, 360 F.3d 1, 3 (1st Cir. 2004) ("The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions. . ..") *See also Millipore Corp. v. Travelers Indem. Co.*, 115 F.3d 21, 29 (1st Cir. 1997).

For these reasons, it is likely that Massachusetts law will apply to the action, favoring retention of the case in the District of Massachusetts.

### III.     CONCLUSION

Tyco Healthcare brought this action in this District because MPI engaged in a scheme to defraud Tyco Healthcare in Massachusetts, necessary witnesses and documents are in this District, and this District is the appropriate venue for this action. MPI has failed to prove that it has overcome the presumption that the case remain in this District, and Tyco Healthcare respectfully requests that MPI's motion to transfer be denied.

        Respectfully submitted,

        TYCO HEALTHCARE GROUP LP

        By its attorneys:

        _____
        /s/ Jeffrey D. Clements, Esq.
        Jeffrey D. Clements, BBO #632544
        Ben T. Clements, BBO #555802
        Clements & Clements LLP
        50 Federal Street
        Boston, MA 02110
        (617) 451-1802

Dated: September 15, 2004

**CERTIFICATE OF SERVICE**

    I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served by hand delivery to counsel of record for the plaintiff on September 15, 2004.

        _____