UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TYCO HEALTHCARE GROUP LP

    Plaintiff,

v.

MEDICAL PRODUCTS, INC.

    Defendant.

Civil Action No. 1:04-CV-11524-DPW

### AFFIDAVIT OF JOSEPH BURKE

I, Joseph Burke, being duly sworn, state as follows:

1. I serve as Manager of Distributor Audits for Tyco Healthcare Group LP and its Kendall division ("Tyco Healthcare") and am employed in the Mansfield, Massachusetts headquarters of Tyco Healthcare. I am responsible for reviewing distributor compliance with Tyco Healthcare policies and contract terms, and assist in detecting product diversion or rebate fraud by distributors who purchase Tyco Healthcare products.

2. I participated in the investigation into certain rebate claims submitted by Medical Products, Inc. ("MPI"). These claims falsely reported that MPI sold the Tyco Healthcare products it acquired to CP Medical of Portland, Oregon. This affidavit concerns MPI's motion to transfer the case to Mississippi, and is not intended to

contain a summary of all of the information known to me as a result of my work concerning MPI's rebate claims.

3. My investigation of MPI's rebate fraud that is the subject of this litigation occurred in Massachusetts; MPI's rebate contract with Tyco Healthcare was approved in Massachusetts; MPI's false rebate claim forms were filed in Massachusetts; the rebate claims were processed in Massachusetts; the credit memos to MPI resulting from the rebate claims were issued in Massachusetts; my communications with MPI were made from Massachusetts; MPI sent invoices falsely claiming products were sold to CP Medical to me in Massachusetts; and the documents reflecting the above-described events are in Massachusetts.

4. Each of the relevant rebate claim forms were sent by MPI to Tyco Healthcare in Massachusetts, and represented that MPI had sold products to CP Medical. The forms referenced a Tyco Healthcare rebate contract that applied to product sales to CP Medical.

5. Each rebate claim form identified Tyco Healthcare's headquarters in Mansfield. An example of one of these forms is attached as Exhibit 1.

6. MPI's rebate claims linked to the CP Medical contracts were processed in Mansfield, and credit memos were issued to MPI from Mansfield. Each credit memo identified Tyco Healthcare's Massachusetts headquarters. An example of one of these credit memos is attached as Exhibit 2.

7. In the course of investigating whether the rebate claim forms were fraudulent, I had several communications with Eddie McCafferty, and repeatedly asked him for information concerning MPI's alleged sales to CP Medical, and for truthful

information about MPI's rebate claims. These communications were made from my office in Mansfield.

8.  Until confronted with the confirmation we had received from CP Medical that it had not purchased any Tyco Healthcare products from MPI, Mr. McCafferty always insisted that MPI was selling the products on which MPI claimed rebates to CP Medical.

9.  After CP Medical admitted purchasing no Tyco Healthcare products from MPI, Mr. McCafferty began maintaining that MPI "drop shipped" the products directly to CP Medical's end-user customers, and paid a commission to CP Medical.

10.  At no time in my communications with him did Mr. McCafferty ever claim that MPI was not selling to CP Medical or to CP Medical's customers. At no time did Mr. McCafferty ever tell me that Rob Cotten or any other Tyco Healthcare employee instructed him to misrepresent sales as being to CP Medical when in fact they were not sales to CP Medical.

11.  In August 2003, in response to my inquiries concerning the sales that MPI claimed had been made to CP Medical, Mr. McCafferty sent a large number of "invoices" to me in Mansfield. These invoices represented that the products had been sold to CP Medical. An example of these invoices is attached as Exhibit 3.

12.  It appeared that Mr. McCafferty or someone else at MPI drew a line through the identification on these invoices of CP Medical as the recipient of the products so as to attempt to support the claim that MPI drop shipped CP Medical's purchases directly to CP Medical's customers. *See* Exhibit 3.

13. Attempting to verify Mr. McCafferty's claim that MPI was selling products to CP Medical but drop shipping to CP Medical customers and to ensure compliance with Tyco Healthcare policies and contract terms and conditions, I repeatedly asked Mr. McCafferty to identify those customers or show that they were legitimate CP Medical customers.

14. Neither MPI nor CP Medical ever identified such customers or otherwise complied with this request.

15. I have reviewed the Affidavit of Mr. McCafferty filed by MPI in connection with its effort to transfer this action to Mississippi. Mr. McCafferty's claim that I refused to provide him with a copy of Tyco Healthcare's written rebate policy is not correct. The Tyco Healthcare rebate policy is contained in the Distribution Price List sent to distributors. Mr. McCafferty did not request an additional copy of the policy in my conversations with him, and if he had, I would have sent him a copy of the rebate policy.

16. The Tyco Healthcare rebate policy states clearly that a distributor is eligible to receive a rebate only if "the product was sold directly to a qualified customer eligible to purchase that product under a contract duly authorized by Kendall [Tyco Healthcare]." Further, the rebate policy to which distributors such as MPI agreed clearly stated that "audits will include, but not be limited to, review of each customer[']s purchases from the distributor which become the basis for any distributor[']s rebate claim." A copy of the rebate policy from the March 2002 Distribution Price List is attached as Exhibit 4.

17. As I am employed in Mansfield, Massachusetts, and reside nearby, the court in Boston is far more convenient to me if I am called to testify in the above-captioned matter than a court in Mississippi.

Signed under the pains and penalties of perjury.

Dated: 9/13/04

Joseph Burke