UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TYCO HEALTHCARE GROUP LP

Plaintiff,

v.

MEDICAL PRODUCTS, INC.

Defendant.

Civil Action No. 1:04-CV-11524-DPW

### AFFIDAVIT OF ERICA SPENDLOVE

I, Erica Spendlove, being duly sworn, state as follows:

1. I serve as Director of Rebates and Tracing for the Kendall division of Tyco Healthcare Group LP ("Tyco Healthcare") and am employed in the Mansfield, Massachusetts headquarters of Tyco Healthcare.

2. I have been employed with Tyco Healthcare in Mansfield for more than nine years as a manager and in other capacities in the Rebate and Tracing and Customer Accounts departments. Twenty-eight people are employed in the Rebates and Tracing department in Mansfield.

3. Among other things, the Rebate and Tracing department is responsible for processing distributor reports of sales to end-user customers to ensure proper crediting of the sales to the appropriate sales representative, and for the processing of distributors' rebate claims, where applicable, for these sales.

4. We regularly receive rebate claim forms (by fax or electronic reporting) from distributors who must report the end-customer to which the products were sold. A customer account representative in my department processes rebate claims by in-putting the information, including item numbers, units of measure, pricing, and rebate contract numbers, from the claim forms into a "batch" in our computer program which then reconciles the information with approved contract information in our database.

5. Computerized credit memos based on our database are generated and returned to the appropriate customer account representative once the batch of claim information is posted.

6. Each of the foregoing processing steps takes place in Mansfield, Massachusetts.

7. I am familiar with rebate claims submitted to Tyco Healthcare by Medical Products, Inc. ("MPI"). Lorraine Mailhot, a customer account analyst in the Rebate and Tracing department in Mansfield, was primarily responsible for processing MPI's rebate claims. Because MPI sent these to Mansfield by fax, Ms. Mailhot manually input the information into the computer program described above.

8. When the credit memos were returned to Ms. Mailhot, she sent them to MPI from our offices in Mansfield by mail. After December 2002, MPI started to deduct the amount of their claim to us from their account regardless of the credit amount deemed appropriate by Kendall. When MPI's claim amount differed from the credit memo amount by more than our set tolerance, we billed this difference back to MPI.

9. MPI submitted numerous rebate claims to my department which reported that MPI sold the Tyco Healthcare products it purchased to CP Medical of Portland, Oregon. These were processed as described above, including reconciliation with rebate contracts that identified CP Medical as the end-customer.

10. To my knowledge, MPI always maintained that CP Medical, in fact, was MPI's customer for the products reported in the rebate claims MPI submitted. If MPI had reported that CP Medical was not actually the customer for the reported products, its rebate claim forms would not have been approved, and we would not have issued credit memos for rebates to MPI.

11. When a new distributor or dealer is identified to my department, we may send an information package which includes policies such as the distributor and rebate policies. In addition, Pat McGrath, a Tyco Healthcare pricing and contract project manager in Mansfield, maintains a list of distributors to which Tyco Healthcare sends the distribution price list, including the rebate policy. Mr. McGrath has informed me that MPI is on the distribution mailing list for 2002 and 2003.

12. As I am employed in Mansfield, Massachusetts, and reside nearby, the court in Boston is far more convenient to me if I am called to testify in the above-captioned matter than a court in Mississippi.

Signed under the pains and penalties of perjury.

Dated: 9/14/04

_Erica Spendlove_
Erica Spendlove