UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TYCO HEALTHCARE GROUP LP**<br><br>**Plaintiff,**<br><br>v.<br><br>**MEDICAL PRODUCTS, INC.**<br><br>**Defendant.** | Civil Action No. 1:04-CV-11524-DPW |

**PLAINTIFF TYCO HEALTHCARE'S MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL DISCOVERY CONCERNING
SALES OF TYCO HEALTHCARE PRODUCTS**

### I.     INTRODUCTION

Plaintiff Tyco Healthcare Group LP ("Tyco Healthcare") moves pursuant to Fed. R. Civ. P. 37(a) for an order compelling defendant Medical Products, Inc. ("MPI") to produce documents and information concerning sales by MPI of medical syringes and other products (the "Products") that it purchased from Tyco Healthcare under a Rebate Contract (the "Rebate Contract"). This information, which MPI asserts is a trade secret, is central to this dispute. Tyco Healthcare brought this action because MPI, a medical products distributor, claimed to be selling the Products to CP Medical, an Oregon company, as required by the Rebate Contract, but instead diverted the Products to other customers so that MPI could fraudulently obtain hundreds of thousands of dollars in rebates from Tyco Healthcare. MPI attempted to further its diversion scheme by submitting falsified invoices, fraudulent rebate claims, and by making false statements about its sale of the Products.

Tyco Healthcare intends to prove in this action that MPI did not sell the Products to CP Medical as required and as MPI claimed, but instead obtained fraudulent rebate claims from Tyco Healthcare and then diverted the Products to other customers and other markets so as to convert to MPI profits rightfully belonging to Tyco Healthcare. In response to Tyco Healthcare's request for the production of documents concerning MPI's sales of Tyco Healthcare's products under the Rebate Contract, MPI produced a sales report with the identity of the customers redacted. (*See* sample page from this report attached as Exhibit ("Ex.") 1). MPI's assertion that the information that Tyco Healthcare seeks is a "trade secret" is not only frivolous, but amounts to a continuing breach of the Rebate Contract and furtherance of MPI's diversion schemes.

First, Tyco Healthcare policies and contractual obligations to which MPI agreed explicitly require MPI to disclose to Tyco Healthcare the identity of the customers to which MPI sold the Products. Second, even if MPI had not already agreed to disclose the identity of its customers, that information is not a trade secret here, and is relevant to the central issue of MPI's fraudulent rebate claims and illicit diversion of Products from customers approved by Tyco Healthcare to unauthorized distributors. Finally, even if MPI's dubious trade secret claim had any basis, the Court has already allowed the parties' Joint Motion for Entry of Confidentiality and Protective Order, which addresses any ostensible trade secret issue.

## II.   FACTS

MPI purports to be, as it represented to Tyco Healthcare, a distributor of medical products to end-users, such as physicians and medical offices. For example, in response to the allegation in the Complaint that "MPI purchases medical products from

manufacturers and distributes those medical products to various end-users," MPI's response was simply "Admitted." (*See* Ex. 3, Answer, ¶ 4.) MPI's answer also states that MPI "distributes Kendall [a division of Tyco Healthcare] needles and syringe products" and resells those products "to its customers." (*Id.* ¶23). In fact, as MPI admitted in its January 5, 2005 deposition, it has no end-user customers. All of its customers-- which it refuses to identify-- are other distributors who re-sell products to veterinary and other markets.

Beginning in 2001, MPI obtained the Rebate Contract from Tyco Healthcare by falsely representing that the contract concerned sales that MPI intended to make to CP Medical, a medical products company based in Portland, Oregon. (*See* Ex. 2, Complaint; Ex. 4, Affidavit of Joseph Burke ("Burke Aff."), ¶¶ 3-12; Ex. 5, Affidavit of Erica Spendlove ("Spendlove Aff.") ¶¶ 9-10).[1]

The Rebate Contract and incorporated Rebate Policy could not be more explicit in notifying MPI that it is obligated to identify end-user customers to Tyco Healthcare:

> **Proof of sale documents must identify hospital/end-user name**, address, zip code, invoice date, Kendall product code. . . .
>
> By signing the rebate request, the individual is certifying that the information is accurate and that the rebate request meets all the policy requirements.
>
> A distributor is eligible to receive a contract rebate only if:
>
> \*     \*     \*
> 2.     The product was sold directly to a qualified customer eligible to purchase that product under a contract duly authorized by Kendall.
>
> *Kendall reserves the right to conduct audits of the distributor's purchases at reasonable times and the distributor agrees to cooperate fully in providing files and documents necessary for such audits. Kendall audits will include, but not*

---

[1] The Affidavits attached to this Memorandum are copies of affidavits originally submitted in connection with Tyco Healthcare's Memorandum in Opposition to Motion to Transfer this action to the District of Mississippi.

3

***be limited to, review of each customers purchases from the distributor which become the basis for any distributors rebate claim.***

\*   \*   \*

*(See* Ex. 4  *Kendal, Rebate Policy*, attached to Burke Aff. at Ex. 4).

Under the Rebate Contract, MPI submitted to Tyco Healthcare over seventy rebate claim forms between July 2001 and July 2003, all of which falsely stated that the sales had been made to CP Medical.  (*Id*.; Ex. 5, Spendlove Aff., ¶ 10).  Because MPI falsely identified CP Medical as the customer on the claim forms, the rebates were duly processed by Tyco Healthcare, and credit memos were issued to MPI.  (Ex. 5, Spendlove Aff., ¶¶ 3-10; Ex. 4, Burke Aff., ¶ 6).  In reliance on the fraudulent rebate claim forms submitted by MPI, Tyco Healthcare was deceived into paying to MPI over $430,000.00.  (Ex. 2, Complaint ¶ 29).

In addition to obtaining the unearned rebate payments, MPI further damaged Tyco Healthcare by diverting the Products to other distributors.  MPI obtained the Products at lower cost by fraudulently obtaining rebates that were available only for sales to qualified and identified end-user customers in medical markets, and then diverted the Products away from the identified end-user customer to distributors, who apparently then re-sold the Products at a higher price to various end-user customers in veterinarian and other markets.[2]  The effect of this diversion scheme is that both MPI and the distributors to which MPI sold fraudulently reduced-cost Products converted Tyco Healthcare's margins to their own unearned gain.

---

[2] Reflecting costs and other market dynamics, rebate contracts are not used for sales to the veterinary market, and distributors are generally not entitled to receive rebates for sales to the veterinary market. *See* Ex. 2, Complaint, ¶ 14.

In July 2003, suspicion about MPI's rebate claims came to the attention of Tyco Healthcare's Manager of Distributor Audits, Joseph Burke. Mr. Burke began inquiring about the matter, and had several communications with MPI's president, Eddie McCafferty, about the CP Medical rebate claims. (Ex. 4, Burke Aff.¶¶ 7-9). In the course of these communications, MPI provided to Mr. Burke numerous invoices that falsely represented that MPI had sold the products under the Rebate Contract to CP Medical. (*Id*., ¶¶ 7-14).

In its deposition last week, MPI, through its president, Eddie McCafferty, made a series of remarkable admissions:

- MPI never sold any of the Products purchased under the CP Medical contract to CP Medical;

- When questioned by Mr. Burke, Mr. McCafferty misled Mr. Burke by stating that MPI "drop-shipped" the Products to CP Medical's end-user customers;

- MPI never sold or "drop-shipped" any of the Products to a CP Medical customer;

- After Mr. Burke requested that MPI provide invoices showing the shipment of the Products to customers that MPI alleged were CP Medical customers, MPI <u>created</u> false invoices stating "Sold to CP Medical."

- Mr. McCafferty mailed these invoices to Mr. Burke with a cover letter that stated that certain other relevant information did not exist because it was "purged" after a price change, a claim that Mr. McCafferty admitted in the MPI deposition was "not true" and "was false."

- MPI actually re-sold all of the Products to other distributors, not end-users.

- At least some of those distributors may have been distributors who otherwise would have purchased products directly from Tyco Healthcare;

- MPI knew that Tyco Healthcare had a separate veterinary products division, and that MPI did not, as Mr. McCafferty described it, "have access" to the veterinary products.

5

- Some of MPI's distributor customers are "veterinary distributors."

A transcript of the deposition has been requested on an expedited basis. In the meantime, the deposition has been suspended pending resolution of this Motion.

Tyco Healthcare has requested "all documents concerning sales, delivery or other disposition by MPI of products purchased by MPI under the Rebate Contract." MPI, however, has refused to produce any documents identifying the customers who purchased the Products. MPI asserts that the identity of the customers is a "trade secret." MPI has no grounds to support its trade secret claim, and Tyco Healthcare is entitled to discover the identity of the end-user customers that received Tyco Healthcare products from MPI because such information is relevant to prove its claims, its damages, and to disprove MPI's defenses alleging some form of "authorization" for its diversion scheme.

### III. ARGUMENT

#### A. The Discovery Sought is Highly Relevant

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). Here, the information about Product sales that Tyco Healthcare seeks is plainly "relevant to the claim or defense of any party."

The identity of the customers that purchased Tyco Healthcare Products from MPI is highly relevant for at least three independent reasons. First, that information will prove that MPI falsified invoices and rebate claims submitted to Tyco Healthcare by demonstrating that the sales were not made to CP Medical. MPI's belated admission that it did not sell the Products to CP Medical, as it had represented, is only the latest in a

6

series of changing stories, denials, and equivocations, and should not be permitted so as to enable MPI to continue concealing the facts about its sale of Tyco Healthcare's Products. At various times, MPI has insisted that it <u>did</u> sell the Products to CP Medical, that while it did not sell the Products to CP Medical it supposedly "drop-shipped" the products to various CP Medical customers, that it sold the Products to end-users, or, when all of those earlier false claims were shown to be false, that it merely sold the Products in a manner suggested by a Tyco Healthcare sales representative.

While MPI's latest version, that it did not sell products to CP Medical or to any of CP Medical's customers, goes a long way toward proving Tyco Healthcare's fraud and breach of contract case, Tyco Healthcare remains entitled to discover the truth about what MPI did with the Products, how much MPI gained by doing so, whether the customers would have purchased those products from Tyco Healthcare but for MPI's fraud, and a host of other relevant lines of inquiry suggested by tracking MPI's sales of the Products ostensibly purchased for sale to CP Medical.

Second, Tyco Healthcare is entitled to discovery of evidence not only from MPI but from those entities that participated in MPI's diversion scheme, or have knowledge about MPI's conduct and ill-gotten gains. The information sought by Tyco Healthcare will lead to admissible evidence about MPI's fraudulent diversion of products to customers and markets, such as veterinarians and veterinary markets, and that MPI wrongfully took for itself sales that Tyco Healthcare was entitled to make or contract with others to make on appropriate terms. Further, the identity of entities that purchased the Products from MPI, and the terms of their transactions with MPI, is relevant not only to liability but also to damages issues. Tyco Healthcare is entitled to recover not only the

amount paid to MPI in reliance on its false rebate claims, but also its lost profits on sales it may have made but for MPI's diversion schemes. Additionally, MPI should be required to disgorge all of its ill-gotten profits.

Third, the identity of MPI's customers will be among the evidence disproving MPI's belated suggestion that they merely sold the products to the customers and in the manner that a Tyco Healthcare sales representative allegedly told MPI would be acceptable. For many reasons, such a defense is unavailing, but it would be unfair to permit MPI to raise such a defense, without enabling Tyco Healthcare to probe the basis for it by thorough examination of the actual transactions that occurred, and by learning about MPI's contemporaneous dealings with its distributor customers, as opposed to MPI's after-the-fact stories.

For these reasons, MPI has no grounds to redact information from documents that it concedes are relevant and responsive to Tyco Healthcare's discovery requests. MPI has the burden to prove that it is entitled to withhold that relevant information on the basis of some privilege, and as discussed below, it cannot do so.

### B.     MPI's Trade Secret Assertion Is Baseless

Although Rule 26(c)(7) permits a party to seek a protective order where trade secrets are sought in discovery, MPI has not done so, and lacks any basis for doing so. As is well recognized, a party asserting that information is a confidential trade secret bears the burden of proving that, among other things, the information is unknown outside of the business, the party has taken reasonably effective measures to protect the information, and the information could not be properly acquired by others. *See Augat, Inc. v. Aegis, Inc.,* 409 Mass. 165, 171 (1991); *Jet Spray Cooler, Inc. v. Crampton*, 361

8

Mass. 835, 840 (1972). Here, MPI not only has failed to take measures to protect the requested information, but has explicitly agreed that Tyco Healthcare is entitled to obtain the information.

Regardless of whether customer information in some instances may be considered a trade secret (*but see Commonwealth v. Robinson*, 7 Mass. App. Ct. 470 (1979) (customer list not trade secret under Mass. Gen. Laws ch. 93, § 42), here MPI could not possibly have expected that it was entitled to withhold the identity of the customers for Tyco Healthcare's Products from Tyco Healthcare. As discussed above, MPI agreed as a condition of its purchases of Tyco Healthcare's products and as a condition of receiving rebate payments to disclose to Tyco Healthcare the identity of the end-users to whom MPI sold the Products. Moreover, as MPI admitted in its deposition, Tyco Healthcare had terminated a 1999 agreement with MPI because MPI had failed to provide information about the customers receiving Products under the 1999 agreement. (*See* Ex. 2, Complaint, ¶ 23). MPI, therefore, knew very well that it would be required to identify its customers to Tyco Healthcare.

Finally, even if MPI's dubious concern about confidentiality of its customers' identity was warranted, the agreed-upon Confidentiality and Protective Order addresses the issue. Under that Order, MPI may make such designations of confidentiality as it believes, in good faith, are warranted, and the information will be adequately protected, subject to Tyco Healthcare's right to challenge any such designation under the terms of the Order.

## IV.     CONCLUSION

Tyco Healthcare respectfully requests that the Court order MPI to produce all responsive documents concerning sales of the Products, without redactions, and that MPI refrain from continuing to conceal the identity of those entities to which it sold the Products.  Because MPI had no reasonable basis for its refusal to produce information concerning customers who purchased the Products, particularly in light of its contractual agreement to identify such customers, and in light of the parties' agreed-upon Protective and Confidentiality Order in this case, Tyco Healthcare also requests pursuant to Fed. R. Civ. P. 37(a)(4) that MPI be ordered to pay Tyco Healthcare's expenses and attorneys' fees incurred in bringing this motion.

> Respectfully submitted,
>
> TYCO HEALTHCARE GROUP LP
>
> By its attorneys:
>
> /s/ Jeffrey D. Clements
> _____
> Jeffrey D. Clements, BBO #632544
> Ben T. Clements, BBO #555802
> Clements & Clements LLP
> 50 Federal Street
> Boston, MA 02110
> (617) 451-1802

Dated: January 11, 2005

### CERTIFICATE OF SERVICE

I, Jeffrey D. Clements, hereby certify that a copy of the foregoing document was served electronically and by first class mail to counsel of record for the defendant on January 11, 2005.

> /s/ Jeffrey D. Clements
> _____