UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP<br><br>Plaintiff,<br><br>v.<br><br>MEDICAL PRODUCTS, INC.<br><br>Defendant. | Civil Action No. 1:04-cv-11524-DPW |

## SUPPLEMENTAL AFFIDAVIT OF MICHAEL B. GALVIN

I, Michael B. Galvin, being duly sworn, hereby state:

1. I am an attorney admitted to practice in the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts. I am an associate attorney at the law firm of Dwyer & Collora, LLP in Boston, MA. Michael A. Collora and I have been retained as legal counsel to Defendant Medical Products, Inc. ("MPI") in the above-captioned case.

2. On September 17, 2004, I received from the Plaintiff's attorney, Jeffrey D. Clements, a letter containing the Plaintiff's Rule 16.1 Settlement Proposal. In the letter, Plaintiff claims it incurred actual damages of $432,287.87, which it calculates based on the amount of the rebate claims submitted by MPI from 2001 through 2003, and offered to settle this case for treble that amount. A true and correct copy of Plaintiff's Rule 16.1 Settlement Proposal is attached at Tab A.

3. During our representation of MPI, I have spoken by telephone and in person with counsel for the Plaintiff. On several occasions, we have discussed the information that is the subject of Plaintiff's Motion to Compel.

4.     MPI has explicitly admitted in its Answer that it did not sell the Plaintiff's products as indicated on rebate claims and invoices to CP Medical and I offered to enter into a stipulation about that fact.

5.     In Plaintiff's First Request for Production of Documents, Request No. 9, Plaintiff sought the production of "[a]ll documents concerning the sales, delivery or other disposition by MPI of products purchased by MPI under the Rebate Contract." In response, I notified counsel for the Plaintiff that MPI had responsive information from the computer database described in the form of a "Ticket History Report," which reveals detailed information about MPI's purchases of the Plaintiff's products from 2001 through 2003, including the identity of customers who purchased the product, the purchase and resale price, the dates of purchase and MPI's profit margin. A full, complete and un-redacted copy of this document is attached hereto at Tab B and is submitted *under seal*.

6.     To protect MPI's highly confidential customer information contained in this report, I objected to the production of the entire report, but produced a redacted version, which reflects all of the information except the customer names.

7.     I also offered to furnish all other even remotely relevant information, such as pseudonyms for the customers listed on the (such as "Customer No. 1" purchased the first 10 items on page 1 and "Customer No. 2" purchased the products and how many products each customer purchased), so that the Plaintiff could tell how many different customers purchased the products and how much products each customer purchased. I also offered to disclose which of those customers were veterinarian distributors and what items were sold to them. Counsel for the Plaintiff rejected those proposals and requested disclosure of the names of MPI's customers.

8.  MPI, through counsel, has offered to provide and/or has already produced *all* information regarding its customers – including their size, the nature of their business (including whether medical or veterinary), the products purchased from MPI, the purchasing price, and the profit earned by MPI per customer – *except* their names.

9.  Counsel for the Plaintiff and I disagree about the meaning of the Protective Order, which this Court issued on December 28, 2004. If MPI designates the Ticket History Report as "Confidential-Attorney's Eye's Only" and discloses it to counsel for the Plaintiff, I believe that the Plaintiff could not use that information for any reason, including to take discovery from the entities listed on that report, because the Protective Order restricts the further dissemination of information designated as "Confidential-Attorney's Eye's Only" to "the judge, law clerk, courtroom and docket clerks and other court personnel." Counsel for the Plaintiff has refused to commit to my interpretation of the Protective Order, insisting that I first produce the non-redacted document before disclosing what he would do with the information.

10. Aware of the dispute over the confidentiality of this information, I offered to postpone the deposition of Mr. McCafferty, however, counsel for the Plaintiff elected not to do so. At that deposition on January 5, 2005, Counsel for the Plaintiff asked Mr. McCafferty to reveal the name of his customers, which he refused to do at my direction on the grounds that that information constituted a trade secret and should not be subject to discovery. At the conclusion of Mr. McCafferty's deposition, counsel for the Plaintiff and I agreed to suspend his deposition to resolve this issue.

SIGNED UNDER THE PENALTIES OF PERJURY, this 27th day of January, 2005.

/s/ Michael B. Galvin
_____
Michael B. Galvin

TAB "A"

# CLEMENTS & CLEMENTS, LLP
## 50 FEDERAL STREET
## BOSTON, MASSACHUSETTS 02110

RECEIVED SEP 17 2004 By:_____

Jeffrey D. Clements
jclements@clementsllp.com

Phone: (617) 451-1802
Fax:   (617) 451-6060

September 16, 2004

**By Fax and Regular Mail**
617-371-1037

Michael B. Galvin, Esquire
Dwyer & Collora, LLP
600 Atlantic Avenue
Boston, MA 02210-2211

Re: Tyco Healthcare Group LP v. Medical Products, Inc.
(04-11524-DPW)

Dear Mr. Galvin:

I wanted to follow up our recent telephone conversation concerning our view of damages in this case, and to confirm the settlement proposal of Tyco Healthcare Group LP pursuant to the Court's Notice of Scheduling Conference.

The rebates fraudulently obtained by Medical Products, Inc. ("MPI") amount to at least $432,287.87. We believe the evidence of repeated false statements and fraudulent conduct will entitle Tyco Healthcare to recover treble this amount under Mass. Gen. Laws ch. 93A.

Accordingly, Tyco Healthcare will agree to settle this matter by payment from MPI of $1,296,863.61, plus reimbursement of Tyco Healthcare's attorneys' fees and costs investigation. In addition, Tyco Healthcare demands a complete and truthful accounting and disclosure from MPI concerning the CP Medical rebate contract and transactions that are the subject of the Complaint.

Please let me know if you have any questions about this proposal.

Sincerely yours,

Jeffrey D. Clements

TAB "B"

TAB B

"TICKET HISTORY REPORT"

FILED SEPARATELY UNDER SEAL