Deposition of Eddie McCafferty
January 5, 2005

Page 251

1    Burke you said, right?
2        A.   Yes.
3        Q.   And he's with Tyco Healthcare in
4    Massachusetts?
5        A.   Yes.
6        Q.   And he was asking about your purchases
7    under the CP Medical contract, was he not?
8        A.   Yes.
9        Q.   And initially you told him that you were
10   selling the products to CP Medical, didn't you?
11       A.   No.  Well, initially he had called Jeff
12   and started that bizarre story, then he calls me,
13   Joe Burke does, and tells me what his conversation
14   was with Jeff, and then I called Jeff, I think
15   we've already talked about this, but that was the
16   initial conversation.
17       Q.   My question though is you had
18   conversations with Joe Burke, correct?
19       A.   Yes.  Yes.
20       Q.   And you told Joe Burke at one point that
21   the products were sold to CP Medical, didn't you?
22       A.   Either sold -- I don't know if I said
23   sold to or sold through, whatever.
24       Q.   But you either said sold to or sold

Deposition of Eddie McCafferty
January 5, 2005

Page 252

1   through CP Medical, correct?
2       A.   Yes.
3       Q.   And you intended to have Mr. Burke
4   believe that CP Medical received the products that
5   you had purchased under the CP Medical contract,
6   didn't you?
7       A.   No.
8       Q.   What did you intend when you told
9   Mr. Burke that the products were sold to or
10  through CP Medical?
11      A.   That they were sold through the CP
12  Medical contract.
13      Q.   Do you remember telling Mr. Burke that
14  you were drop shipping to CP Medical customers?
15      A.   Yes.
16      Q.   And when did you tell him that?
17      A.   About the same time he was asking -- he
18  was drilling me on some other questions.
19      Q.   And he asked you for your invoices about
20  the sales of the products you had sold or let me
21  rephrase that.  Mr. Burke asked you for invoices
22  reflecting the sales of the products you had
23  purchased under the CP Medical contract, correct?
24      A.   Yes.

Deposition of Eddie McCafferty
January 5, 2005

Page 254

```
 1    this stuff, I don't need this, I need where they
 2    were sold, and I said Joe, I told you that I
 3    wasn't going to give you that.
 4         Q.   * At this point though you had led
 5    Mr. Burke to believe that you had dropped shipped
 6    the products to CP Medical's customers, didn't
 7    you?
 8              MR. GALVIN:  Objection to the
 9      form.  You can answer if you understand.
10              MR. CLEMENTS:  Can you just read
11      the question again.
12              * (Question read)
13         Q.   You can answer the question.
14         A.   I did say that.
15         Q.   And do you recall receiving a letter
16    from Mr. Burke requesting invoices reflecting
17    those sales --
18         A.   Yes.
19         Q.   -- in early August --
20         A.   Yes.
21         Q.   -- 2003?
22         A.   (Witness nods head.)  Yes.
23         Q.   And in response to that letter, that's
24    when you sent Mr. Burke the invoices that you've
```

Deposition of Eddie McCafferty
January 5, 2005

Page 257

```
 1      A.   Yes.
 2      Q.   Then if you go to MPI 1882, the next
 3  page, there's a reference to an attached document,
 4  do you see that at the bottom?
 5      A.   Yes.
 6      Q.   Medical Products request for invoices?
 7      A.   Uh-huh.
 8      Q.   Yes?
 9      A.   Yes.
10      Q.   In any event, you recall receiving the
11  letter shortly after August 1st or August 2, 2003?
12      A.   I did.
13      Q.   Did you speak to Mr. Burke about the
14  letter?
15      A.   Yes.
16      Q.   And when was that?
17      A.   Let's see.  This was in August.  No.
18  I'm not sure if I spoke to him about this or not.
19      Q.   Let me ask you, you knew that Mr. Burke
20  was inquiring in order to ensure compliance with
21  the Tyco Healthcare Kendall rebate policy when you
22  received this, didn't you?
23           MR. GALVIN:  Objection to the
24    form.  You can answer if you can understand
```

Deposition of Eddie McCafferty
January 5, 2005

Page 258

```
 1    the question.
 2         A.    Say that again or rephrase it.
 3         Q.    You understood when you received
 4    Mr. Burke's letter in August of 2003 that
 5    Mr. Burke was attempting to ensure compliance by
 6    MPI with the Kendall Tyco Healthcare rebate policy
 7    by MPI, didn't you?
 8         A.    I understand what he was getting at.
 9         Q.    You knew he was trying to enforce the
10    rebate policy, didn't you?
11         A.    Well, the conversations that he had and
12    I had had about that was we never felt like we
13    were under rebate.
14         Q.    Let me direct your attention to the
15    bottom of MPI 1881, the second page of this
16    Exhibit 9.  Do you see where Mr. Burke writes to
17    you in his e-mail, "No rebate claims or rebate
18    deductions will be allowed until we determine
19    compliance with our rebate policy"?
20         A.    Yes.
21         Q.    You received that e-mail, didn't you?
22         A.    Yes.  They called this a rebate, but
23    this was not a rebate.
24                MR. GALVIN:  Just he'll ask the
```

Deposition of Eddie McCafferty
January 5, 2005

Page 259

```
 1    questions.
 2            THE WITNESS:  Okay.  I'm sorry.
 3       Q.   The letter of August 2, 2003, the first
 4    page of Exhibit 9 beginning of the first paragraph
 5    -- I'm sorry -- beginning of the second paragraph,
 6    could you read that first sentence, please?
 7       A.   "As you know CP Medical are the only
 8    customer on the rebate contract for which Medical
 9    Products may submit a valid rebate claim."
10       Q.   And the next sentence?
11       A.   In order for Kendall Healthcare to
12    assess the validity of your rebate claims and
13    reductions, we require all purchase orders,
14    invoices and proof of delivery to CP Medical
15    and/or other customers for all Kendall -- or other
16    customers for all Kendall Healthcare products for
17    which Medical Products claims a rebate.
18       Q.   And you read Mr. Burke's letter when you
19    received it?
20       A.   Uh-huh.  I did.
21       Q.   Yes?
22       A.   I did, yes.
23       Q.   And you sent a letter and invoices in
24    response to that request, didn't you?
```

Page 260

```
 1      A.   Yes.
 2           (Deposition Exhibit No. 10 letter dated
 3           8/21/03 to McCafferty with invoices,
 4           marked for identification)
 5      Q.   Let me show you Exhibit 10, Mr.
 6  McCafferty.  It's a fairly thick document, so take
 7  a look through it and let me know when you're
 8  ready for me to ask you a question about it.
 9      A.   I'm familiar.
10      Q.   You recognize Exhibit 10?
11      A.   Yes.
12      Q.   What is it?
13      A.   It's invoices -- actual invoices that we
14  sold of Monoject products to our customers.
15      Q.   And the first page is a letter you wrote
16  to Mr. Burke, correct?
17      A.   Uh-huh.
18      Q.   Yes?
19      A.   Yes.
20      Q.   Let's just take a look at one of the
21  attached invoices, okay, let's go to TH0443.  See
22  that?
23      A.   Yes.
24      Q.   How did you actually obtain these
```

Deposition of Eddie McCafferty
January 5, 2005

Page 261

1  invoices in order to send them to Mr. Burke in
2  August of 2003?
3       A.   These are invoices -- these are actual
4  invoices that I promised him and I told him that
5  they would be referenced to CP Medical.
6       Q.   Let me just stop you because that's not
7  my question.  My question is where did you
8  actually get these invoices in order to send them
9  to Mr. Burke?
10      A.   Out of our files.
11      Q.   What files?
12      A.   Our customer invoice files.
13      Q.   Are they different files or are they in
14 one file?
15      A.   No.  They're -- I mean, this customer
16 may have ordered -- well, this is -- they may have
17 ordered this along with other things, no, it's --
18 they're just -- they're not separated.
19      Q.   TH0443 through TH0495 in Exhibit 10 is a
20 series of invoices, correct?
21      A.   Yes.
22      Q.   Were they together in the MPI files?
23      A.   No.
24      Q.   How did you get them together?

Deposition of Eddie McCafferty
January 5, 2005

Page 262

```
 1      A.   We generated a report for medical -- I
 2  mean, for Monoject sales and the customers that
 3  came up, we pulled the invoices out and sent them
 4  to him.
 5      Q.   Who did that?
 6      A.   That, I don't know.  One of the girls in
 7  the office or maybe a couple of them 'cause it
 8  was, you know, probably a chore.
 9      Q.   Did this come from the Synchronics
10  system?
11      A.   No.  This would have come from the
12  files.
13      Q.   The paper files?
14      A.   Paper files, yes.
15      Q.   Do you keep a file for each customer?
16      A.   Yes.
17      Q.   And is it your testimony that for each
18  of your separate customers, these invoices were
19  contained in the files before Mr. Burke asked you
20  for the invoices?
21      A.   Yes.  Yes.
22      Q.   How did they come to be contained in
23  those files?  Just describe that process, if you
24  would, please.
```

Deposition of Eddie McCafferty
January 5, 2005

Page 263

```
 1      A.   After the -- after the order is shipped
 2  and invoiced and a copy of the invoice is put into
 3  the customer file.
 4      Q.   Let's take an example, okay.  Let's take
 5  the example that we started with, TH0443.  Okay.
 6  The customer was not CP Medical, correct?
 7      A.   Exactly.
 8      Q.   So what file did this come from?
 9      A.   One of our customers that we sell -- the
10  customer that we sold this to.
11      Q.   Looking at this invoice, how can you
12  tell which customer it was?
13      A.   Give me a second.  I don't know that you
14  could tell.  Well, you could tell from the invoice
15  number.
16      Q.   So let's stay with TH0443.
17      A.   You can tell from the invoice number.
18      Q.   So TH0443 is an invoice number, that's
19  difficult to read 135878, is that right?
20      A.   Looks right, yeah.
21      Q.   And what can you tell about that invoice
22  number, what does that tell you?
23      A.   It identifies that particular invoice
24  for a particular customer.
```

Deposition of Eddie McCafferty
January 5, 2005

Page 264

```
 1      Q.   Well, that identifies this document
 2   TH0443 as that invoice, doesn't it?
 3      A.   Yes.
 4      Q.   So this TH0443, the Bates number is
 5   invoice number 135878, is that right?
 6      A.   Yes.
 7      Q.   Yes?
 8      A.   Yes.
 9      Q.   And is it your testimony that this is an
10   invoice that was sent to a customer of yours?
11      A.   It is.
12      Q.   And did you ever have questions from
13   their customers about why the invoices they were
14   getting said sold to CP Medical?
15      A.   They didn't have that on there.
16      Q.   Pardon me?
17      A.   They didn't have that on that.
18      Q.   You didn't actually send an invoice that
19   looks like TH0443 to one of your customers?
20      A.   No.  No.  Yes, but it -- it would have
21   their name on it.
22      Q.   Well, this document that I'm looking at
23   TH0443 has CP Medical on it?
24      A.   Yes.
```

Page 265

```
 1      Q.   So this document never went to any of
 2   your customers?
 3      A.   This document didn't, but these products
 4   did.
 5      Q.   But the document TH0443 was never sent
 6   to any --
 7      A.   No.
 8      Q.   -- MPI customers, is that right?
 9      A.   No.
10      Q.   And yes, it's right that it was not
11   sent?
12      A.   Exactly.  Yes.
13      Q.   And none of the documents that are
14   actually identified as invoices in Exhibit 10 were
15   actually sent to MPI customers, were they?
16      A.   Not as you see them.
17      Q.   They looked different when they went to
18   the customer, is that right?
19      A.   They had the customer name on them and
20   said CP on them, yes.
21      Q.   When did CP Medical's name get on these
22   documents?
23      A.   When Joe Burke wanted a copy of the
24   invoices.
```

Deposition of Eddie McCafferty
January 5, 2005

Page 266

1    Q.   So you changed the invoices after
2  Mr. Burke's request?
3    A.   Yes, with his knowledge.
4    Q.   Why do you say with his knowledge?
5    A.   'Cause I told him that I would send him
6  the actual invoices, but I would not send him the
7  actual customers that that invoice was sold to.
8    Q.   Did you tell him that you were going to
9  change the actual invoices?
10   A.   Yes.  I told him that I have no problem
11 sending you the invoice, but I would reference it
12 to the contract, CP Medical which was the
13 contract, you would not -- you would not get a
14 customer name.
15   Q.   So these invoices that you sent to
16 Mr. Burke weren't the actual invoices that went to
17 your customers?
18   A.   Not this -- not these particular pages.
19   Q.   These particular pages were altered to
20 say CP Medical rather than the real customer?
21   A.   Exactly.
22   Q.   That alteration happened after
23 Mr. Burke's request?
24   A.   Yes.

Deposition of Eddie McCafferty
January 5, 2005

Page 267

1    Q.   Were there other alterations to the
2  invoices that appear in Exhibit 10 after
3  Mr. Burke's request?
4    A.   Well, he didn't need the pricing so we
5  took it off, but I said that in the statement.
6    Q.   So these documents that are in
7  Exhibit 10 weren't actually in the files for your
8  customers before Mr. Burke requested invoices,
9  were they?
10   A.   I mean, that's the only place we could
11 have got them was from the files.
12   Q.   Let me ask you, did documents that have
13 CP Medical as the sold to recipient and have no
14 prices and no amount exist in customer files until
15 Mr. Burke asked you for them?
16   A.   No.
17   Q.   So these were created after Mr. Burke
18 asked for invoices --
19   A.   Yes.
20   Q.   -- weren't they?
21   A.   Yes.
22   Q.   So you didn't go and get them out of
23 customer files, did you?
24   A.   Not this particular thing, but to create

Deposition of Eddie McCafferty
January 5, 2005

Page 268

1  this, yes.
2      Q.   So this particular thing, and you're
3  referring to Exhibit 10's invoices, were created
4  at the time and in response to Mr. Burke's request
5  for actual customer invoices, isn't that right?
6      A.   That would be right.
7      Q.   Who created these documents?
8      A.   Like I said, you know, I don't know.  A
9  couple girls probably in the office.
10     Q.   Did you instruct them to?
11     A.   Yes.
12     Q.   And did they ask why?
13     A.   No.
14     Q.   Do you know the actual people in the
15 office who did it?
16     A.   No, I don't.  I mean, it could have been
17 a couple of high school girls, you know, that come
18 in and work part time or something, I don't know.
19     Q.   Let's go back to TH0442, Mr. McCafferty,
20 the first page of Exhibit 10.  You wrote to
21 Mr. Burke, "These invoices go back to the last
22 price change in March 2003," do you see that?
23     A.   Yes.
24     Q.   What did you mean by that?

Deposition of Eddie McCafferty
January 5, 2005

Page 269

```
 1     A.   Well, he was saying -- he was asking me
 2  if I could start sending him some and I said yes
 3  and he said, you know, just send me, you know,
 4  like in groups or whatever and I was just
 5  referencing that these are March '03 -- go back to
 6  March '03.
 7     Q.   And what did you mean by anything on the
 8  past -- let me ask that again.  You also wrote to
 9  Mr. Burke, "Anything on the past price changes are
10  purged from one year to the next."  You wrote
11  that, right?
12     A.   Yes.
13     Q.   And that's not true, is it?
14     A.   No.
15     Q.   That was false?
16     A.   Yes.
17     Q.   In response to Mr. Burke's inquiries --
18  questions to you, you never told him that you only
19  called CP Medical the customer because Rob Cotten
20  told you to do that, did you?
21     A.   No.
22     Q.   You never told him that?
23     A.   No.
24     Q.   You never suggested that Joe Burke ask
```

Page 291

```
 1   COMMONWEALTH OF MASSACHUSETTS
     MIDDLESEX, SS.
 2

              I, Jacqueline Curran, Registered Merit
 3   Reporter and Notary Public in and for the
     Commonwealth of Massachusetts, do hereby certify
 4   that pursuant to appropriate notice of taking
     deposition, there came before me the
 5   following-named person, to wit:  EDDIE McCAFFERTY,
     who was by me duly sworn; that he was thereupon
 6   examined upon his oath and his examination reduced
     to writing by me; and that the deposition is a
 7   true record of the testimony given by the witness.

 8         I further certify that I am not a relative
     or employee or counsel or attorney for any of the
 9   parties, or a relative or employee of such counsel
     or attorney, nor am I financially or otherwise
10   interested in the outcome of the action.

11         IN WITNESS WHEREOF, I have hereunto set my
     hand and seal this 12th day of January, 2005.
12

13

14

15
     My Commission Expires
16   September 27, 2007

17                       Notary Public

18

19

20   The foregoing certification of this transcript
     does not apply to any reproduction of the same in
21   any respect unless under the direct control and/or
     direction of the certifying reporter.
22

23

24
```

Page 292

```
 1   DEPONENT'S ERRATA SHEET
     AND SIGNATURE INSTRUCTIONS
 2
         The original of the Errata Sheet has been
 3   delivered to Michael Galvin, Esq.
         When the Errata Sheet has been completed by
 4   the deponent and signed, a copy thereof should be
     delivered to each party of record and the ORIGINAL
 5   delivered to Jeffrey Clements, Esq. to whom the
     original deposition transcript was delivered.
 6
 7   INSTRUCTIONS TO DEPONENT:
 8       After reading this volume of your deposition,
     indicate any corrections or changes to your
 9   testimony and the reasons therefor on the Errata
     Sheet supplied to you and sign it.  DO NOT make
10   marks or notations on the transcript volume
     itself.
11
     REPLACE THIS PAGE OF THE TRANSCRIPT WITH THE
12
     COMPLETED AND SIGNED ERRATA SHEET WHEN RECEIVED.
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 293

```
 1   ATTACH TO THE DEPOSITION OF EDDIE McCAFFERTY
     CASE:  Tyco Healthcare Group, LP vs. Medical
 2   Products, Inc.

 3                    ERRATA SHEET

 4   INSTRUCTIONS:  After reading the transcript of
     your deposition, note any change or correction to
 5   your testimony and the reason therefor on this
     sheet.  DO NOT make any marks or notations on the
 6   transcript volume itself.  Sign and date this
     errata sheet (before a Notary Public, if
 7   required).  Refer to Page 292 of the transcript
     for errata sheet distribution instructions.
 8

 9   PAGE     LINE
     ____     ____        CHANGE:   _____
10                        REASON:   _____
     ____     ____        CHANGE:   _____
11                        REASON:   _____
     ____     ____        CHANGE:   _____
12                        REASON:   _____
     ____     ____        CHANGE:   _____
13                        REASON:   _____
     ____     ____        CHANGE:   _____
14                        REASON:   _____
     ____     ____        CHANGE:   _____
15                        REASON:   _____
     ____     ____        CHANGE:   _____
16                        REASON:   _____
     ____     ____        CHANGE:   _____
17                        REASON:   _____
     ____     ____        CHANGE:   _____
18                        REASON:   _____
     ____     ____        CHANGE:   _____
19                        REASON:   _____

20
             I have read the foregoing transcript of my
21   deposition and except for any corrections or
     changes noted above, I hereby subscribe to the
22   transcript as an accurate record of the statements
     made by me.
23
                         _____
24                       EDDIE McCAFFERTY         DATE
```