UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

TYCO HEALTHCARE GROUP LP

Plaintiff,

v.

MEDICAL PRODUCTS, INC.

Defendant.

Civil Action No. 1:04-CV-11524-DPW

**AFFIDAVIT OF PATRICK McGRATH**

I, Patrick McGrath, being duly sworn, state as follows:

1. I currently serve as Senior Contracts Specialist with Tyco Healthcare Group LP and its Kendall division ( "Tyco Healthcare" or "Kendall"). I have been employed with Tyco Healthcare and Kendall for forty one years, and have worked in Boston and other Massachusetts locations of Kendall and Tyco Healthcare since 1976. Before I became Senior Contracts Specialist approximately three years ago, I was a Pricing and Contracts Project Manager for many years.

2. In both positions, my responsibilities include loading distributor and end-user pricing for approximately 6,000 Kendall Tyco Healthcare products into the company's computer system once pricing has been determined by Tyco Healthcare's marketing managers. My responsibilities also include notifying Tyco Healthcare distributors of pricing and related policies.

3. In general, distributor and end-user pricing for Tyco Healthcare's products are adjusted annually. Each year, I load into Tyco Healthcare's computer system price

data that includes identification of the products by item number, description, quantity per shipping unit, price unit, the unit prices, and the suggested resale price for hospital and alternate site end-users.

4. The unit prices are the prices for which approved distributors may purchase Tyco Healthcare products, and are referred to as the "distributor into-stock price" or the "distributor acquisition price." Most distributors pay the distributor into-stock price in acquiring products from Tyco Healthcare. The suggested resale prices are intended to provide for a 15% margin when distributors re-sell the products, but distributors are not required to resell the products at the suggested resale price.

5. Exceptions to the distributor into-stock price that most distributors pay to acquire Tyco Healthcare products include separate "net bill contracts" or "rebate contracts" between Tyco Healthcare and certain distributors. A net bill contract is an agreement between Tyco Healthcare and a distributor based on volume commitments and other approved terms. A rebate contract is an agreement among Tyco Healthcare, a specific end-user, and eligible distributors where pricing to a specific end-user has been negotiated and approved by Tyco Healthcare. A distributor may receive a rebate under the terms of the rebate contract and Tyco Healthcare policies if the distributor sells the products to the specific end-user identified in the rebate contract.

6. A rebate contract may be approved by Tyco Healthcare where an identified end-user customer and Tyco Healthcare have agreed to a certain price for identified products, and an approved distributor agrees to acquire the products identified in the rebate contract from Tyco Healthcare at the distributor into-stock price, and then resells the products to the identified end-user customer. If the distributor

verifies that it indeed re-sold the products to the approved end-user identified in the rebate contract, the distributor may receive a rebate of a portion of the distributor into-stock price to reflect the pricing approved by Tyco Healthcare and the end-user customer.

7. All of the distributor into-stock prices, product identification, suggested resale prices, and unit information described above are organized together with Tyco Healthcare's terms of sale, Rebate Policy, and other information for distributors. This information is then placed on diskettes and organized into hard-copy catalogues, and is referred to as the "Distributor Price List."

8. The new pricing reflected in the annual Distributor Price List is effective on March 1, and we seek to give distributors sixty days' notice of the new pricing.

9. I am responsible for sending the Distribution Price List to active distributors each year, and usually I complete this task by the end of December. Beginning in 2000, I have provided the Distributor Price List to active distributors by mailing a computer diskette containing the Distributor Price List with a cover letter. The cover letter states that the diskette contains the Distributor Price List and Tyco Healthcare's Terms of Sale, and that rebate reimbursement requests for sales to qualified customers should be based and calculated on the Distributor Price List after it takes effect. Finally, the cover letter I use informs the distributor that it can request a hard copy of the Distributor Price List, in addition to the diskette version.

10. The Distributor Price List is mailed to all distributors identified on a list of active distributors. Active distributors are approved by Tyco Healthcare's credit department after application by a distributor. Once the credit department has approved

a distributor, the information about the distributor, including the mailing address, is entered into the Tyco Healthcare computer system. This information is used for sales, shipping, and communicating pricing and policy information.

11.  I have confirmed that Medical Products, Inc. was an active distributor and was included in the mailing of the Distribution Price List in December 2001 and December 2002. The mailing list for those years includes the following recipients:

> MEDICAL PRODUCTS INC
> PO BOX 207, RIPLEY, MS 38663
>
> MEDICAL PRODUCTS
> 511 E WALNUT ST, RIPLEY, MS 38663

12.  If the Distributor Price List mailing is returned as undeliverable or for some other reason that indicates a distributor did not receive the Distributor Price List, updated or corrected address information is entered into the computer system so that the incorrect mailing information or an inactive distributor would not remain on the mailing list in the subsequent year.

13.  Medical Products, Inc. and the above-described mailing information concerning Medical Products, Inc. remained in the mailing list system after the 2002 and 2003 Distribution Price Lists were mailed, and I have no reason to believe that Medical Products, Inc. did not receive the mailings in December 2001 and December 2002.

14.  Attached to this Affidavit as Exhibit 1 is a copy of the cover letter and a print-out of the Distributor Price List 274P, effective March 1, 2002, that was contained on the diskettes mailed to distributors on the active list, including Medical Products,

Inc., in December 2001. A description of the Kendall Rebate Policy is included in Distributor Price List 274P.

15. Attached to this Affidavit as Exhibit 2 is a copy of the cover letter and a print-out of the Distributor Price List 275P, effective March 1, 2003, that was contained on the diskettes mailed to distributors on the active list, including Medical Products, Inc., in December 2002. A description of the Kendall Rebate Policy is included in Distribution Price List 275P.

Signed under the pains and penalties of perjury.

Dated: 2/4/05

*Patrick McGrath*
Patrick McGrath

5