UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TYCO HEALTHCARE GROUP LP<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MEDICAL PRODUCTS, INC.<br><br>　　　　Defendant. | Civil Action No. 1:04-cv-11524-DPW |

### REPLY TO PLAINTIFF'S OPPOSITION TO MPI'S
### MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER

Defendant Medical Products, Inc. ("MPI") submits this brief Reply to Plaintiff's Opposition to MPI's Motion for a Supplemental Protective Order. MPI does so to correct some of the errors and misstatements contained in the Plaintiff's Opposition ("P. Opp.") and to provide the Court with additional information discovered since MPI filed its Motion for a Supplemental Protective Order.

　　1.　　**MPI Took More Than Adequate Steps to Safeguard Customer Names.**

While striving to create the appearance that the disclosure requirement that the Plaintiff seeks to have this Court specifically enforce at this early stage of the litigation was contained in documents which it previously said "could not be more explicit" (P. Mem. at 3), and now, backpedaling from that claim, calls merely "ample," (P. Opp. at 4-7 & n.2), the Plaintiff does not (and cannot) dispute one of MPI's central contentions: there was no *signed, written* contract requiring MPI to supply customer names to the Plaintiff. Without that fundamental document, the Plaintiff struggles to fill the contractual void with terms buried inside 70-plus page mass-mailings that the Plaintiff claims it sent to MPI in December, 2001, nine months after MPI began

purchasing products at issue. (P. Opp. at 5-6 & McGrath Aff., ¶¶ 11-15) Enforceable contractual terms – particularly key ones that now jeopardize MPI's business, such as a clause requiring the disclosure of the identities of over one hundred needle and syringe purchasing customers to one of MPI's chief competitors – cannot be slipped into agreements in such an unfair and unilateral fashion. See <u>Sweet Home Water and Sewer Assoc. v. Lexington Estates, Ltd.</u>, 613 So.2d 864, 871 (Miss. 1993)(parties had not contracted to an "impact fee" where there was no written or oral contract or meeting of the minds regarding that term); Rest. (2d) Contracts § 17 (requiring mutual assent or "meeting of the minds" for a binding contract).

While placing heavy reliance on the mail room clerk, the Plaintiff offers this Court *nothing* by way of affidavit or otherwise from Rob Cotten, the Plaintiff's Account Manager who actually met with MPI employees and explained the contract to them. See generally, P. Opp. In sharp contrast, MPI has submitted a sworn statement from Mr. McCafferty, who attended those meetings and testified that Mr. Cotten informed him and others at MPI that the company could continue to sell products to existing customers and that they should report CP Medical and another company on the rebate claim forms submitted to the Plaintiff. See McCafferty Supp. Aff. ¶¶ 11-12. The Plaintiff's decision not to rebut or contest those sworn statements with anything from Mr. Cotten, who still works as an Account Manager for the Plaintiff, speaks volumes about what he would say on this crucial topic.[1]

While nonetheless pressing this Court for an order requiring the disclosure of MPI's customer names, the Plaintiff also argues, contradictorily, that that information is not a trade secret because it is "public information" that is "easily ascertainable." (P. Opp. at 8) If that were

---

[1] Depositions of Mr. Cotten and former MPI employees who attended meetings with him are scheduled for March 8, 2005 and March 22 and 23, 2005, respectively. MPI does not object if the Court delays ruling on the pending motions until those depositions occur, and the record on this issue is more fully developed.

so, why would the Plaintiff have demanded the very same information at least twice from MPI, filed this lawsuit (requesting, among other things, equitable accounting, which is essentially the same relief it seeks through its Motion to Compel) and brought this Motion to Compel?  In reality, the customer names redacted from MPI's Ticket History Report are not available elsewhere, particularly not in the detailed format of that Report, which, in addition to their names, provides information on the quantities, prices and dates of their purchases.  It is that combination and detail that constitutes a trade secret and warrants protection as confidential business information under Rule 26(c)(7).  See, e.g., James v. Hudgins, 261 F.Supp.2d 636, 642 (S.D. Miss. 2003)(specific list of customers constituted trade secret despite being published in public directories because directories could not easily duplicate same information).

      2.      **Even Accepting the Plaintiff's Terms of the Contract, the Plaintiff Would Not Have Obtained "End-User" Names.**

Without conceding that MPI was obligated to divulge its customer names to the Plaintiff, it should be pointed out that, even accepting *arguendo* the terms as the Plaintiff describes them, the Plaintiff still would not have received actual "end-user" information.  As the Plaintiff well knew throughout the pertinent time period, MPI was a distributor who sold products to other smaller distributors, who, in turn, sold products either to entities or persons who actually provided medical treatment or to other distributors.  Under this arrangement, MPI never knew the actual "end users," at least in that sense of those words.  The Plaintiff contends the failure to provide information MPI never had violates the terms of the contracts at issue.  See, e.g., Plaintiff's Memo. in Opposition to MPI's Motion to Transfer (Dkt # 9) at 2-3 (alleging MPI was contractually required to "sell[] the products to the end-user identified in the rebate contract (in this case, CP Medical)").

However, at his recent deposition, Hal Lundell, the Plaintiff's Account Manager, made admissions that seriously, if not fatally, compromise that claim. Among other things, Mr. Lundell testified that he visited CP Medical before the Plaintiff approved the contract at issue; observed CP Medical manufacturing and shipping medical kits; and understood that CP Medical did not provide medical services to anyone directly. (The transcript of Mr. Lundell's 2/8/05 deposition has not been prepared yet.) Even with that knowledge, Mr. Lundell approved sales to CP Medical. It will be difficult, if not impossible, for the Plaintiff to prove that MPI violated the terms of any contract, much less did so willfully or with a fraudulent intent, by selling products to others where the Plaintiff knew from the very outset that CP Medical would be doing precisely that.

**3.    Disclosure of MPI's Confidential Customer Names to the Plaintiff Would Risk Sufficient Harm to MPI and Its Customers to Warrant a Supplemental Protective Order.**

Without citing a single case, the Plaintiff postulates that each of the potential harms cited by MPI – including the real threat that the Plaintiff would take away MPI's needle and syringe business or the business of its customers, as the Plaintiff does not dispute it has done before – are not the types of harm the trade secret privilege protects. P. Opp. 9-10 & n.3. The Plaintiff's argument rests entirely on the flawed assumption that MPI's sales of the Plaintiff's products to customers other than CP Medical violated the terms of the contracts at issue and thus constituted a so-called "diversion" of products, which as explained above and in MPI's prior filings, the Plaintiff has yet to prove, and MPI contends, it will not do so.

Based on the affidavits submitted to this Court from those present when the contract was negotiated and formed, the undisputed evidence thus far is that Mr. Cotten, an authorized representative of the Plaintiff, instructed MPI employees that it could continue to sell the

4

Plaintiff's products to MPI's existing customers without revealing their identities to the Plaintiff, and that MPI would not have entered into a purchasing relationship with the Plaintiff if that was not the case. See McCafferty Supp. Aff., ¶ 11; McCafferty Aff. (Dkt # 7) ¶ 11. Requiring MPI – the largest distributor of needles and syringes manufactured by Terumo, a chief competitor of the Plaintiff – to divulge over one hundred of its highly confidential and proprietary customer names and purchasing histories would give the Plaintiff a significant competitive advantage in the negotiations and sales of its needles and syringes to MPI's customers because the Plaintiff might be able to offer products those customers at lower costs. It would also risk harm to MPI's customers, who are also distributors of the Plaintiff's products, and subject them to losing business to the Plaintiff. See MPI's Opp. at 14-15 (discussing harms). Risk of such economic damage and loss of business are classic harms that Rule 26(c)(7) was designed to avoid. See, e.g., Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc., 200 F.R.D. 255, 261 n.7 (M.D.N.C. 2001)(listing cases in which federal district courts recognized interest in confidentiality of supplier lists due to fears of predatory and harassing practices, loss of business, sales, and reputation).

   **4.**  **The Plaintiff Has Failed to Show that Actual Customer Names Are Relevant to Any Disputed Issue.**

Rather than explaining how and why customer names are relevant to disputed issues, the Plaintiff mostly complains about the timing of MPI's admission in its Answer, and MPI's offer to stipulate that it sold products to customers other than CP Medical. P. Opp. at 10-11. None of those complaints, however, makes the underlying evidence about the identity of MPI's customers probative on any disputed issue involving the claims or defenses in this case.

In conclusory fashion, the Plaintiff also claims that the names of MPI's customers will also help it disprove MPI's claim that its sale of products to those customers "was not an

5

innocent mistake" (P. Opp. at 10-11), but the Plaintiff does not explain how or why. It makes a vague reference to "statements, terms and documents" it might request from MPI's customers (P. Opp. at 11), but does not say *what* statements, terms of documents or *how* that information would differ from the detailed information it concedes it already received in the redacted Ticket History Report. Instead, the Plaintiff wrongly resorts to trivializing MPI's good faith offers to furnish relevant information about its customers as "half hearted" (P. Opp. at 3, 11), and insists that only full disclosure of MPI's most sensitive and important business assets will suffice. To the extent that the Plaintiff does not trust MPI's counsel to provide information about MPI's customers accurately, MPI would not object to using a third party to provide information about its customers to the Plaintiff other than their names. Cf. Battle Creek Equip. Co. v. Roberts Mfg Co., 90 F.R.D. 85, 86 (W.D. Mich. 1981)(ordering disclosure of defendant's customer lists and pricing structure to neutral third party who would use information to establish the amount of damages).

     **5.**    **Redaction of MPI Customer Names is a Fair and Appropriate Remedy.**

Given the lack of relevance to any truly disputed issue and the significant risk that disclosure would pose to MPI, this Court should allow MPI to produce a customer list providing *all* information about its sales of the Plaintiff's products during the relevant time period, *except* its customer names. In its Opposition, the Plaintiff tries to distinguish cases cited by MPI, claiming that certain cases cited by MPI are distinguishable, and that the "remaining cases" involve "more invasive discovery," and, in any event, were resolved by the entry of Protective Order like the one already in place here. (P. Opp. at 8-9.) Not true. The Plaintiff blithely ignores the cases on which MPI primarily relies, such as In re Independent Serv. Org. Antitrust Litig., 162 F.R.D. 355 (D. Kan. 1995), which involved a similar request for discovery of a

6

supplier list. The court found that the protective order in that case, which is essentially the same as the one here, was inadequate, and thus ordered the disclosure of all information about the suppliers except their names. Id. at 358-59. The Plaintiff likewise does not address Drexel Heritage Furnishings, which also involved a similar discovery dispute that the court suggested it would have resolved by an order like the one entered in Independent Serv. Org. Antitrust Litig. 200 F.R.D. at 262. See also MPI's Opposition and Motion for Supp. Protective Order (discussing Independent Serv. Org. Antitrust Litig. and Drexel Heritage Furnishings).

## CONCLUSION

For the foregoing reasons and those provided in MPI's prior filings, the court should deny Plaintiff's motion to compel and/or issue a supplemental protective order exempting the redacted portions of MPI's Ticket History Report from discovery in this case.

Respectfully submitted,

MEDICAL PRODUCTS, INC.

By its attorneys,

/s/ Michael B. Galvin
_____
Michael A. Collora (BBO No. 092940)
Michael B. Galvin (BBO No. 630515)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Tel: 617-371-1000
Fax 617-371-1037

Dated: February 16, 2005